**LEE v. PERRIN.**

**No. 17296.**

Court of Appeal of Louisiana. Orleans.

Dec. 11, 1939.

Rehearing Denied Jan. 9, 1940.

Cyril Dumaine, of New Orleans, for intervenor and appellant.

Archie J. Grefer, of Gretna, and Clarence E. Strauch, of New Orleans, for plaintiff-appellant.

L. Julian Samuel, of Gretna, and Porteous, Johnson & Humphrey, of New Orleans, for appellee.

WESTERFIELD, Judge.

This suit grows out of a collision between a motor truck belonging to the defendant and, at the time of the accident, driven by Anthony Oregon, his employee, and an automobile owned and, at the time of the accident, driven by the plaintiff, Anthony Lee. The accident happened on August 4, 1938, about 9:45 p. m. on Highway 31 in Plaquemines Parish in the vicinity of a village known as "Riverside". As a result of the collision Anthony Lee suffered a fracture of his left arm and this suit, in which $3,065 is claimed as damages, is based upon consequent pain and suffering, loss of earning capacity due to disability and damages to plaintiff's automobile which is placed at $65. The Charity Hospital intervened claiming $190 for hospitalization of Anthony Lee and asked that it be awarded this amount out of any sum Lee might recover.

The charges of negligence imputed by plaintiff to defendant's driver, for the consequence of which, under the doctrine of respondeat superior, defendant is charged with liability, are excessive speed, driving on the wrong side of the road and intoxication. The defendant denies the alleged negligence of his employee in each particular and, in the alternative, pleads contributory negligence upon the ground that the plaintiff was driving on the wrong side of the road.

There was judgment below dismissing the claims of both plaintiff and intervenor and they have appealed.

On the question of intoxication there is no evidence to indicate that the driver of the truck was drinking, much less intoxicated. A number of witnesses testified that after the accident they smelled liquor on the breath of each of the occupants of the truck. There were five men in the truck, two on the driver's seat and three in the body of the truck. The three in the rear were passengers who had solicited and been granted permission to ride from Buras to New Orleans, to which City the truck was

destined. The three passengers admitted that they had one or more bottles of beer at their dinner which they consumed in a combination restaurant and saloon in Buras, and that they bought a half pint bottle of whiskey which they consumed during the truck ride from Buras to the scene of the accident, but each of them declared that the driver was not given any liquor of any kind and consumed none with his dinner which he ate at the same restaurant with the others. The driver testified that he had had no alcoholic drink of any kind. The alleged intoxication of the driver has not been proven.

Anthony Lee, who was driving the automobile which was headed towards Buras, while the truck with which he collided was headed in the opposite direction—towards the City of New Orleans—gives the following version of the accident: "This truck was driving on an angle, first one side of the road, and then the other. That caused me to slow down. I slowed down. The truck got about not quite half a block from me and pulled hard to the left, and come back to the right again, so I stopped when he came to the right again, and he slung over like he wanted to make out like, and he speeded up on his truck and cut away from me, and I was as far to the right of the road as I could get, and he took and hit the side of my car. When he hit the left wheel he swung the front side, and I don't know where the piece of timber came from that was hanging on the door and it stood there and broke my arm."

The occupants of plaintiff's automobile, Martha Norwood, Inez Norwood, Thelma Westerfield and Adrian Faustin, gave a somewhat different account of the accident, though in the main their testimony was corroborative of the plaintiff. However, none of these witnesses refer to the zig-zagging course of the truck as told by Anthony Lee.

Anthony Oregon, the driver of defendant's truck, testified that he saw plaintiff's automobile approaching him when the vehicles were about three blocks away (meaning, we take it, three city blocks or approximately nine hundred feet); that he blew his horn twice, dimmed his lights and drove very close to the ditch on his right hand side of the road. He gives his speed at the time of the accident as about eighteen miles per hour and that of the automobile as forty miles per hour, as compared with plaintiff's estimate of twenty miles for his automobile and forty-five miles for the truck. Oregon was asked what happened after he had dimmed his lights and he replied "I seen he was going to hit me and I took to the ditch, and he hit the back end of my truck, the side". He also said that after the accident the truck went into the ditch on its right side of the road and the automobile remained on the highway near the middle of the road.

Leon Navarre, the driver's helper, who was sitting next to the driver in the truck, corroborated Oregon concerning the blowing of his horn, the dimming of the lights, but estimated the speed of both vehicles from thirty to thirty-five miles per hour.

Two of the three passengers in the truck, Leonard Barrios and L. J. Cognevich, testified that they believed the speed of the truck to be between twenty-five and thirty miles an hour and that it was on its right or proper side of the road and that they did not see the automobile. They admitted that they had been drinking from the half pint of whiskey, but denied that they were drunk or that the driver had had anything to drink. It was agreed that if Edward Barrios, the third passenger in the truck was present and sworn as a witness, he would testify substantially to the same effect as Leonard Barrios and Cognevich.

■ From the foregoing review of the testimony it is apparent that it is in hopeless conflict. Plaintiff's counsel recognize this situation, but contend that the physical facts to which resort should be had in similar situations is very helpful to plaintiff's version of the accident. Dillon v. New Orleans Public Service, Inc., La.App., 170 So. 406; McCullough v. Billeaud, 19 La. App. 193, 140 So. 63; Baudine v. Teche Transfer Company, 15 La.App. 90, 130 So. 60, 61; Culpepper v. Jordan, 11 La.App. 626, 124 So. 531. For example, counsel says that the photographs of the colliding vehicles, which are in evidence, indicate that the defendant's truck grazed along the left hand side of plaintiff's automobile and that plaintiff's left arm, which was resting upon the window next to the driver's seat, was broken when it was struck by a piece of timber attached to defendant's truck. This, they say, is indicated by the damage to the truck and the automobile along their respective left sides, particularly in the vicinity of the door handle on plaintiff's car, therefore, it is said that plaintiff's car did not strike the rear end of defendant's truck

as it turned into the ditch on its right side as is claimed. We freely concede the correctness of the principle that the physical condition of colliding vehicles and other mute evidence may be resorted to for enlightenment in cases of this kind, but we do not draw the conclusion from the evidence referred to that counsel does. The position of the vehicles after the accident, as we gather from the evidence, is not very helpful in this case. The truck was in the ditch and the automobile on the roadway near the middle of the road with its left front wheel demolished and its left front fender pushed back against the hood of the car. There was also damage to the left side of the automobile near the rear and evidence of a scraping as though made by some protrusion from a passing vehicle. We cannot say that inference may properly be drawn from these circumstances which would support plaintiff's case.

■■ On the whole, our conclusion is that plaintiff has failed to make out a case with legal certainty. The issues involved are exclusively questions of fact which the trial judge resolved against the plaintiff and, under the familiar rules of appellate procedure often referred to by this and other courts, the findings of the lower court will not be disturbed unless manifestly erroneous, consequently, and for the reasons assigned the judgment appealed from is affirmed.

Affirmed.