This is a suit for damages for physical injuries resulting from a collision which occurred on United States Highway No. 90, about eleven miles from the City of New Orleans, on October 26, 1939, at about 1 o'clock a.m., when the Plymouth sedan, owned and driven by the plaintiff, John Nuss, collided with the Chevrolet automobile owned and driven by Kenneth MacKenzie. Nuss sued MacKenzie and his employer, Edward E. Elmer, in solido, claiming $13,627. The alleged liability of Elmer is based upon the contention that, at the time of the accident, MacKenzie was using the automobile upon an errand of his employer. Nuss alleged that just prior to the accident, he was driving in the direction of the City of New Orleans on the extreme right-hand side of the road when, without warning or knowledge on his part of the presence of the MacKenzie automobile on the highway, his Plymouth car was struck by the MacKenzie Chevrolet with the result that he was seriously injured and his car demolished; that he does not know how the accident happened and, under the circumstances, invokes the doctrine of res ipsa loquitur.
MacKenzie denied all responsibility for the accident, averring that he was driving on his right-hand side of the road and that, as he approached the point where the accident happened, he glanced to his left and saw a car bearing down upon him, without *West Page 846 
headlights; that he applied his brakes and swerved to his left in a fruitless effort to avoid the collision. Both defendants deny that MacKenzie was acting in the course of his employment. MacKenzie reconvened and asked for $1,185 for physical injuries and damage to his automobile.
The Board of Administrators of the Charity Hospital of Louisiana at New Orleans filed a petition of intervention seeking judgment for $45, under Act 289 of 1938, for hospitalization given Nuss.
There was judgment below dismissing both the main and reconventional demands as well as the intervention of the Charity Hospital. The suit as against MacKenzie was dismissed as of nonsuit. Plaintiff has appealed and MacKenzie and Elmer have answered the appeal seeking to have MacKenzie recover on his reconventional demand.
United States Highway No. 90, sometimes called the Chef Menteur Highway, where the accident occurred, is a paved thoroughfare 45 feet wide. It is divided into four traffic lanes, two on each side with a wide black line in the center. Two of these lanes, those on the right or Lake Ponchartrain side of the highway, are for the use of traffic moving towards the City of New Orleans and the other two on the left or Mississippi River side for traffic moving in the opposite direction. The roadways on the extreme right and left are referred to in the testimony as "slow lanes", while those immediately contiguous to the black line on either side are called the "fast lanes".
The drivers of the colliding automobiles are unable to explain the accident. Neither saw the other until a moment before the impact and both claim to have been driving on their extreme right or about 25 feet apart. There was a passenger in the Nuss car by the name of William Campbell, who died as a result of injuries received in the accident. No witness, other than the two drivers, was produced who had seen the accident, therefore, we have practically no evidence concerning the cause of the accident.
The pictures of the automobiles, which were offered in evidence, show that the right front side of each car was the point of contact, notwithstanding the fact, that in view of the position of the cars on the highway, as claimed by the drivers, each car should have passed to the left of the other with a margin of about 20 feet.
The only explanation we have of this circumstance is that each driver testified that immediately before the accident he turned his automobile towards the left.
The MacKenzie car, which was proceeding away from New Orleans, entered a right-hand curve. In MacKenzie's words: "I * * * came to a curve to the right and while going along this curve with my lights on, I suddenly saw a car coming from the left and the only way I saw it was from the reflection of my lights on that car and it was almost in my face when I saw it".
He did not know the exact spot with respect to the dividing line of the highway that his car came to rest, but the evidence clearly preponderates in favor of the contention of plaintiff's counsel to the effect that both cars were on the lakeside of the road, that is to say, on the side on which Nuss should have been.
While there is nothing in the pleadings on the subject, the record is replete with testimony, offered without objection, tending to prove that the drivers of the colliding vehicles were intoxicated.
Officer Gleber of the Fifth Precinct Police Station arrived at the scene of the accident with Lieutenant Barrett shortly after it occurred. He testified that both the Chevrolet and Plymouth cars were on the lakeside of the highway, the Chevrolet in the slow lane and the Plymouth car in the fast lane. In the Chevrolet car he found a half-pint whisky bottle one-half full of whisky and in the Plymouth car two empty pint whisky bottles.
Lieutenant Barrett corroborates Officer Gleber and added that the two empty bottles smelled of whisky. He made a report to Captain Peterson, Commanding Officer of the Fifth Precinct, in which it was stated that "the three men (including Campbell, who died shortly thereafter) all appeared to be drunk". He said that his report was based on his observations of the actions of Nuss and MacKenzie, adding "I found whisky in the cars and they were not washing their faces with it".
Nuss attempted to explain the presence of the bottles in his car by saying that though at one time they contained whisky, they had been used as containers of hydraulic brake fluid and SAE 10 motor oil, used to pump into the compressors on refrigerators which his occupation required him to repair. *West Page 847 
Miss Mary Lou Ward, one of the operators of a restaurant called the Court of Four Sisters, located on the highway a short distance from the scene of the accident, testified that Nuss and Campbell had been in her place of business for about two hours. She declared that she had served Campbell two highballs, but that Nuss had nothing to drink at all.
Nuss testified that he had had nothing but a bottle of beer, which he drank at Martins, shortly after leaving the city earlier in the night.
MacKenzie admitted that he had had a couple of drinks, but denied that he was in any way under the influence of liquor.
However this testimony is hardly sufficient to prove that either MacKenzie or Nuss were intoxicated, but it is a possible explanation of the extraordinary accident.
While it is true, as we have said, that both automobiles were found, after the accident, on the lakeside of the road, we are unable to say where the vehicles collided.
Plaintiff introduced a witness by the name of Charles Morel, an automobile mechanic with some twenty years experience. Morel testified that he visited the scene of the accident three days afterwards and examined the automobiles which, in the meantime, had been towed to a garage. He found oil spots on the lakeside of the roadway. He declared that the crank case of the Chevrolet was broken and that of the Plymouth undamaged and that, therefore, as an expert, he was able to say that the oil spots on the highway proved that the crank case of the Chevrolet had been drained at that spot. He therefore, expressed the opinion that the accident had occurred there.
In Hobgood v. Louisiana A.R. Company, La.App. First Circuit, 156 So. 657, 658, in speaking of an oil spot on the roadway, it was said that "the oil spot so found, and which is shown to have been made from the drippings of the Ford car, is a fact strongly corroborative of the testimony of plaintiff that Henson had run across the center of the road into his car". However, in that case there was testimony to the effect that the Ford car had actually run across the center of the highway, while in this case Nuss is unable to say what happened. No doubt the location of oil spots, when proven to have been caused by drainage from one of the colliding vehicles, is a circumstance, we may say a strong circumstance, suggestive of the point of collision and, if this oil which was found by Morel came from the Chevrolet driven by MacKenzie (perhaps it did, but there is nothing certain about it, since it was found there three days after the accident), the inference to be drawn therefrom is even stronger.
In the instant case, however, there is no testimony by anybody to the effect that the Chevrolet crossed the middle stripe of the highway, and we cannot accept the testimony of Morel based upon the location of the oil spot as sufficient.
The long and short of the matter is that the plaintiff's case depends upon the application of the doctrine of res ipsa loquitur. This doctrine has been defined on numerous occasions.
In Bruchis et al. v. Victory Oil Company, 179 La. 242,153 So. 828, 831, the Supreme Court said:
"Under the general heading `Negligence' the doctrine res ipsa loquitur as applied to negligence cases is explained in Ruling Case Law, vol. 20, p. 187, as follows:
"`More precisely the doctrine res ipsa loquitur asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care.'
"Res ipsa loquitur is a phrase meaning the thing speaks for itself,' `the affair speaks for itself,' or `a general way of saying that the circumstances attendant upon an accident are of themselves of such a character as to justify a jury in inferring negligence as the cause of the accident.' 34 Cyc. 1665; 45 C.J. 1193-1196; 7 Words and Phrases, First Series, [p.] 6136. * * *"
In Hamburger v. Katz, 10 La.App. 215, 120 So. 391, 393, we quoted the following from Berry on Automobiles, 4th Ed., page 216: "`The doctrine of "res ipsa loquitur" may be applied in actions seeking to recover *West Page 848 
for injuries due to the operation of automobiles. The facts surrounding and forming part of an automobile accident may be such as to raise the inference that the accident was due to negligence on the part of the person operating or in control of the automobile.'"
In Schick v. Jenevein, 145 La. 333, 82 So. 360, 362, the Supreme Court said: "Where one is upon the wrong side of the traveled portion of the road, or has not conceded to the other party whom he has attempted to pass that portion of the highway to which he is entitled, and a collision occurs, the burden is upon him who so violates the rule to show that his act was not the proximate cause of the injury, or that there were justifiable circumstances which excuse his conduct."
In Ford, Bacon Davis, Inc., v. Shaw, 8 La.App. 751, we find: "After the collision the cars moved in the general direction in which they were being driven, and both came to a stop on defendant's right hand side of the roadway, but the evidence shows that after the collision each of the cars swerved to that side of the roadway, and at least there cannot be any clear inference drawn from the situation of the cars after the collision, which supports the testimony of defendant rather than that of the witnesses for plaintiff, and we are of the opinion that the preponderance of the evidence shows that the collision occurred while defendant was driving on the wrong side of the roadway, and defendant carried the burden of proof to show that such circumstance was not the proximate cause of the collision".
In Huddy's Encyclopedia of Automobile Law, Vol. 17-18, at pages 19-21, it is stated: "The act of negligence must be proved by a preponderance of the evidence. Its proof cannot rest in mere speculation, conjecture, or surmise. The plaintiff must make out his case with reasonable certainty. Negligence must be established by direct or circumstantial evidence. Direct evidence is not necessary. Circumstantial evidence may be sufficient. And, generally speaking, the sufficiency or insufficiency of the evidence to prove negligence, in actions for injuries resulting from the operation of motor vehicles, is governed by the general rules applicable to actions for negligence. Where a participant in an accident upon a public highway is upon the wrong side of the street or highway at the time, his presence there may be prima facie evidence of negligence, and no more."
In Volume 10 of Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 6555, pages 153-158, we find the following:
"Where there is nothing in the record upon which to base a verdict except conjecture, it is not sufficient. * * *
* * * * * *
"* * * Circumstantial evidence may constitute adequate proof of negligence.
"Thus the position and physical condition of motor vehicles after a collision and evidence as to the violence with which occupants were thrown out may demonstrate the falsity of testimony of witnesses for the defendant, and they may be consistent with the truthfulness of the plaintiff's testimony as to the manner of the occurrence of the accident. Such circumstances may be sufficient to support a verdict for the plaintiff.
* * * * * *
"It cannot be said, however, as a matter of law, where there is a collision of automobiles that the accident did not happen as stated by either party solely from the respective position of the automobiles after the accident; there being such a complexity of forces and resultants as to afford no idea where the two automobiles would go or what they would do".
In Lee v. Perrin, La.App., 192 So. 387, we stated that the position of colliding vehicles, after the accident, offers mute evidence which, upon occasions, may be resorted to in determining the cause of the collision.
From the foregoing authorities it is apparent that whenever it is made to appear from the development of essential facts that accidents do not ordinarily occur without the fault of one or the other of the drivers of the colliding vehicles, the presumption is indulged that fault existed, and, if not rebutted by the party whose fault is presumed, will be considered conclusive of his negligence. This would be true in the instant case if there were proof of the alleged fact contended for by plaintiff, that the accident occurred on the lake side of the highway, but this important and necessary prop is missing, and, therefore, *West Page 849 
the basis for the application of the doctrine of res ipsa loquitur lacks an important and necessary element of proof.
Our conclusion is that neither plaintiff in the main demand, nor defendant in his reconventional demand, has made out a case. It follows, as a matter of course, that the case against Elmer was properly dismissed.
For the reasons assigned it is ordered, adjudged and decreed that the judgment appealed from be and it is amended in so far as it dismisses plaintiff's suit against Kenneth MacKenzie as in case of nonsuit, and that there now be judgment dismissing plaintiff's suit. In all other respects the judgment appealed from is affirmed.
Amended and affirmed.
 *Page 18