GLADNEY, Judge.
Plaintiffs, Joe Costanza, Sr., Beth B. Costanza, wife of J. A. Costanza, J. A. Costanza, individually as master of the community and as administrator of the estate of his minor child, John Thomas Co-stanza, have brought this suit for property loss and personal injuries sustained in an automobile collision which occurred November 6, 1955 about 2:00 o’clock P.M. on the Blanchard Road just south of its intersection with Fail-view Road and which point is situated north of Cross Lake in Caddo Parish, Louisiana. Made defendants are Arthur H. Loe and his public liability insurer, Great American Indemnity Company of New York. The appeal is by defendants from a judgment which casts them for stated amounts. Mrs. Beth B. Costanza has answered the appeal to have this court increase the award in her favor.
At the time aforesaid, Joe Costanza, Sr., with weather normal and the blacktopped highway dry, was driving a Willys station wagon in a northerly direction on the Blanchard Road. He was accompanied by Mrs. Beth B. Costanza and her minor child, John Thomas Costanza, aged five years, seated on the front seat next to him, and was engaged in taking his daughter-in-law and grandson to their home at Mrs. Beth Costanza’s request. Approaching from the south and meeting the station wagon was a Ford automobile owned by Arthur H. Loe being driven by an employee, Bobby Stephens. Following the Costanza vehicle at a distance of several hundred feet was another vehicle operated by Mr. Tyre Johnson. The collision between the two vehicles occurred slightly south of a “Y” intersection of Blanchard Road with Fairview Road, the roads forming an acute angle *395 •with Fairview Road entering from the northwest. The trial judge who personally-viewed the locus of the accident described the general scene in the following language:
"South of this intersection and the point of impact about 150 or 200 feet the road makes a turn to the east of almost 90° and then continues straight in an easterly direction for several hundred feet through an underpass under the Kansas City Southern Railroad. About 150 or 200 feet north of this intersection and the point of impact is the crest of a rise. From this crest southward to the intersection and the point of impact and on around the curve and through the underpass above mentioned, the road declines. To the north of the crest of the rise above referred to the road declines to the north for a short distance and then levels out on a level straight course. In addition to the intersection with Fairview Road above mentioned there is, about 50 or 75 feet north of that intersection and the crest, another intersecting road which leaves the Blanchard Road on the west and continues in a southwesterly direction. Neither of these roads completely intersects the Blanchard Road, that is, neither one continues across and on the east side. These two intersecting roads cross each other slightly west of the Blanchard 'Road, forming the top of a ‘Y’ with the Blanchard Road.”
Several legal issues are presented embracing charges of negligence against both drivers, a plea of contributory negligence by Arthur H. Loe and his insurer and the validity of a third party action. The third party action was filed on behalf of the Great American Indemnity Company of New York and Arthur H. Loe, against Standard Accident Insurance Company, the liability insurer of Joe Costanza, Sr., under LSA-R.S. 13:3381 et seq. Arthur H. Loe also filed a reconventional demand for recovery of property loss to his automobile.
In the trial court Standard Accident Insurance Company, made third party defendant, filed an exception of no cause or right of action, which exception was sustained and judgment thereon signed on June 8, 1955, the judge a quo handing down written reasons for his decision. There was no direct appeal from this judgment, but following a judgment rendered after a trial of the case on its merits, signed January 27,, 1956, the present defendants perfected orders for suspensive and devolutive appeals. Although counsel for both sides of the third party action have cautiously briefed the issues raised through the exceptions, we are convinced and conclude that the issue is now moot, especially in view of the findings set forth in this decree.
Turning now to a consideration of issues involving the negligence of the two drivers, we think it clear that the decisive issue in the case is solely one of fact. Appellees assert the evidence discloses that the point of impact between the two vehicles occurred on Costanza’s side of the road about a foot and one-half or two feet east of the center, that Mr. Costanza was at all times immediately prior to the collision traveling on his proper side of the road at a moderate rate of speed and that at no time did he ever cross the center of the road, and, therefore, the driver of the Loe vehicle negligently left his proper side of the road and invaded that in which the station wagon was traveling. It is further charged that Bobby Stephens was driving at an excessive rate of speed under the circumstances and did not have his automobile under proper control. The defense is that Mr. Costanza just before Stephens applied his brakes signalled for a left turn and began to turn his vehicle to the left in front of Stephens, and the latter, believing that Costanza was going to cross in front of him, applied his brakes and cut to the left in order to avoid a collision, but that Costanza then cut back to the right after having crossed the center of the road.
After hearing the testimony of Mr. Co-stanza, his daughter-in-law, Tyre Johnson and Bobby Stephens, and personally viewing the scene of the accident, the district judge held the case to be with plaintiffs and that the driver of the Willys station wagon was free of negligence. In addition to the eyewitnesses above mentioned, photographs *396 taken immediately following the accident and.the testimony of a police officer shed some -light on the question of fault.
Mr. Costanza and his daughter-in-law testified that they approached the intersection with the intention of turning left and proceeding out Fairview Road, that Co-stanza signalled his intention of making a left turn primarily because of the Johnson car which was following him in the rear, and that the hand signal so given was quickly withdrawn when he observed the approach of the Ford automobile. Both of these witnesses testified that at no time did Costanza ever cross the center line, nor did he ever actually begin the movement for a left turn. Mr. Johnson, the driver of the vehicle following the Willys, testified he had been following for some distance and that Mr.- Costanza was traveling about twenty or twenty-five miles per hour, that he remained at all times on his right and proper side of the road, and never at any time began his intended left turn. All three testified that as the Loe vehicle came close to the station wagon Stephens cut over into the left or the east lane of travel and Mr. Costanza cut his car sharply to the right and -wound up in the ditch on that side of the road.
Counsel for appellants argue strenuously that the testimony of Mr. Costanza, his daughter-in-law and Mr. Johnson indicates that the left turn had actually been commenced by Mr. Costanza and this caused Bobby Stephens, who was driving in his proper lane of traffic, to apply his brakes, and because he was expecting the driver of the station wagon would continue with his left turn, Stephens attempted to turn his vehicle to the left for the purpose of avoiding the collision. Pointing out that these three witnesses testified Mr. Costanza turned his vehicle to the right prior to the occurrence of -the collision, and that the locus of impact was approximately in the center or slightly to the left of the-center 'or east side of the road, counsel argue the conclusion is inescapable that the Costanza vehicle was on its left side of the road and had commenced the turning movement prior to the impact. But this contention is supported only by the testimony of Bobby Stephens, whereas the three witnesses testified positively that the Costanza automobile never left its right lane of travel prior to the collision. This factor is the turning point of the case, for arguendo, if the evidence proved Costanza had commenced a turning movement and had, or was about to invade Stephens’ lane of travel, Costanza then would be guilty of negligence. The preponderance of the evidence, however, was with plaintiffs and the judge a quo so held. We see no error in this holding. In assigning reasons for his decision our brother of the trial court made the following observations:
“The writer of this opinion visited the locus of this accident and it is manifestly a dangerous set-up. Approaching from the north on the Blanchard Road a driver is unable to see cars that have come under the underpass and are rounding the curve until he has almost arrived at the crest; and the driver of a car approaching from the south and coming through the underpass is able to see around the curve and to the north after he has gone only about 100 feet away from the underpass. To the north of the crest of the rise north of the intersection are road signs on the west side of the road facing southbound traffic indicating the intersection and the S-turn in the road through the underpass. Under these circumstances it is our opinion the driver of a car from the north approaching this site is amply notified of the situation and should, in the exercise of reasonable care, proceed at reduced speed and have his car under such control as would enable him to safely negotiate the area.

“About the time Mr. Costanza thus sig-nalled his intention to make a left turn the Loe vehicle driven by Stephens suddenly appeared over the crest of the hill at a rapid rate of speed, estimated by the witnesses at from 45 to 50 miles an hour. The evidence satisfies us that Mr. Costonza was driving his station wagon, or- Jeep, at 20 or 25 miles an hour as he approached the point at which he intended to turn. After the Loe vehicle had topped the crest of this *397 rise and proceeded down the incline toward the Costanza vehicle, Stephens, the driver of the Ford, applied the brakes on his car causing it to begin to slide and veer towards his left and it continued on in this manner across the center of the highway pointed directly at the Costanza vehicle approaching from the opposite direction. Seeing this, Costanza undertook to cut his vehicle to his right, that is to the east, but he was unable to do so in time to avoid being struck by the Loe vehicle. The left front corner of the Costanza car was struck by the left front corner of the Loe vehicle, the Costanza car continuing on into the ditch on the right or east side of the highway where it came to rest. The Loe car was spun around about 90° and came to rest almost squarely across the highway.”
We have noted and examined the authorities cited by counsel for appellants, consisting of Daigle v. Cobb, 1931, 18 La.App. 212, 138 So. 213; Austin v. Sumrall, 1932, 19 La.App. 868, 141 So. 772; Tyler v. Marquette Casualty Company, La.App.1955, 79 So.2d 376. The cited cases are inap-posite. Daigle v. Cobb turned upon a left signal which the court held sufficient to cause the other driver to believe his left lane was about to be invaded and justified the steps taken by the driver in the emergency created thereby. In the instant case Bobby Stephens testified he never saw Costanza give a left or turning signal. He, therefore, could not have justified his action under the facts of the cited case. In Austin v. Sumrall and Tyler v. Marquette Casualty Company, the drivers in each instance had actually commenced the execution of the turning movement and were held responsible for the emergencies which resulted therefrom.
The judgment from which appealed was predicated on holding that Mr. Co-stanza was free of negligence and that the sole proximate cause of the accident was the negligence of Bobby Stephens: in not having his car under proper control, driving at an excessive rate of speed under the circumstances, and in leaving his own side of the road and invading the lane of travel in which Costanza was lawfully proceeding. We are in agreement with these findings.
Nor do we feel warranted in changing any of the awards granted to plaintiffs as damages. There can be, and in fact there is no serious controversy as to the amounts determined in favor of Joe Co-stanza, Sr. and J. A. Costanza, individually and as administrator of the estate of John Thomas Costanza. We are also of the opinion that the award made in favor of Beth B. Costanza is neither excessive nor inadequate. However, there is dissatisfaction as to the allowance by counsel on both sides, and consequently we here give further consideration to the nature and extent of the injuries received by her. Her total claim for personal injuries was for $14,750 and she was awarded the sum of $2,500. The medical evidence indicates quite clearly that Mrs. Costanza received severe contusions, lacerations and abrasions on both her knees and a rather severe blow on the side of her face. The force and suddenness of the collision caused a typical whiplash injury to the neck muscles and ligaments. She was hospitalized for shock and pain for a period of eight days, during which time complete medical examinations were had. The X-rays revealed no bony pathology and the principal injury was diagnosed as a cervical sprain. Treatment consisted of traction and the wearing of a neck brace for six weeks after the patient left the hospital. Mrs. Costanza was also required to take periodic diathermy treatments. She was able to return to her work as nurse at the hospital on January 14, 1955. For some time thereafter she complained of frequent headaches and neuralgia pains in her neck, shoulders and upper back; At the time of trial Mrs. Costanza still suffered some ill effects from the accident and in the opinion of the doctors who testified these would continue indefinitely. After weighing carefully the opinions of the doctors who testified, we find our conclusions are entirely consistent with that of the district court.
Therefore, for the reasons hereinabove assigned, the judgment from which appealed is affirmed at appellants’ cost.