HARDY, Judge.
This is an action by plaintiff wife who seeks to recover damages, resulting from an automobile accident, from the defendant, as automobile liability insurer of her husband. From a judgment in favor of defendant rejecting plaintiff’s demands she prosecutes this appeal.
The accident occurred at or near 10:00 o’clock P.M. of October 19, 1957, on U. S. Highway 165, Caldwell Parish, approximately two miles south of the city limits of Columbia. Plaintiff, Martha Anderson Lawrence, was a guest passenger of her husband, Tracy L. Lawrence, who was driving his 1956 Chevrolet Coach south oh the highway en route to the family home which was located on the east side thereof. As Lawrence attempted to make a sharp left turn across the highway, to enter the driveway to his home, his car was struck by an automobile owned and operated by John D. Carroll, who was also driving south and who had pulled into the east lane of the highway and was attempting to pass three vehicles, including the Lawrence automobile, which were moving in the same direction.
There is no substantial conflict of testimony as to the facts involved. Approaching the point at which he proposed to make his left turn, and, while something more than 150 feet therefrom, Lawrence, observing that his blinker lights were not operating, gave proper signal of his intention, by extending his arm horizontally out the left window of the car, and at the same time made observation for following traffic. Noting that two cars in his rear, separated by intervals of 75 to 100 feet, had observed and heeded his signal by slowing their speeds Lawrence decelerated his speed from some 35 or 40 miles per hour to approximately 20 miles per hour. At a point fixed as being about opposite a neighbor’s residence located 40 to 50 paces north of his driveway, Lawrence withdrew his arm, rolled up the left front window, and proceeded for the remaining distance of 120 to 150 feet to a point opposite his drive, •without making any further observation with respect to traffic approaching from the rear, where, in his words, he “ — turned in pretty fast.” According to the uncontra-dicted testimony of three passengers in the Carroll car the speed of this vehicle was estimated at from 35 to 45 miles per hour. It was further established that a yellow line indicating a no passing warning was located in the west lane of the highway, in which all cars were normally moving, beginning at a point some 180 feet north of the Lawrence driveway. As the Lawrence car turned sharply to its left across the east lane of the highway, it was struck by the Carroll car, and the plaintiff suffered the injuries for which she seeks damages in this action.
Plaintiff’s claim is based upon the contention that the collision was due to the negligence of her husband, the defendant’s assured, in whose car she was a guest passenger. Conversely, the defense rests upon the claim that the negligence of Carroll was *340 the sole and proximate cause of the collision.
It follows that the issue with which we are confronted must be determined by the factual conclusion as to whether Lawrence was guilty of negligence which caused, or concurred in or contributed to the occurrence of the accident.
It was the conclusion of our learned brother of the district court, as evidenced by his written opinion, that the gross negligence of Carroll in pulling into his left lane “ — after having crossed the yellow warning line, — ” and attempting, without sounding his horn, to pass three preceding cars, all of which had decreased their speed in order to permit the negotiation of a left-hand turn by the lead car, was the proximate cause of the accident. The opinion further indicated that the trial judge found Lawrence free from negligence in connection with the occurrence of the accident.
It is first to be observed that the action of Carroll in “crossing” the yellow line had no bearing upon the accident. As a matter of fact, it must be concluded that Carroll began his passing operation by pulling into his left lane at a point some 60 feet or more before reaching the northernmost end of the yellow line, and it is therefore obvious that he did not cross the yellow line in beginning his passing operation. It is further established by the testimony of Lawrence, himself, that he was not relying upon the protection accorded by the yellow line, and, as a matter of fact, was not even conscious of its existence at the time of the occurrence of the accident. We do not think the presence of the yellow line had any bearing upon the accident. Such a warning, placed at proper points approaching grades or curves obstructing vision of traffic approaching from the opposite direction, are clearly designed to prevent passing operations at locations where possible danger from traffic moving in an opposite direction may be anticipated, but it is certain that the existence of such a warning in the instant case was neither designed nor intended to fit the factual circumstances which are present. The violation of this prohibition, while establishing negligence on the part of Carroll, did not constitute an act of negligence which caused or contributed to the accident in question.
Accepting the uncontradicted testimony of witnesses as to the relative speeds, it must be considered, as above noted, that the Lawrence car, and the two unidentified vehicles immediately following him, had slowed to a speed of not more than 20 miles per hour at a point not less than 120 feet from the Lawrence driveway, and the Carroll car, in its attempted passing operation, was moving at a maximum speed of 45 miles per hour. It is therefore evident that, while the Lawrence car was moving 120 feet at a speed of 20 miles per hour, the Carroll car had moved in excess of 240 feet at a speed of 40 to 45 miles per hour. Accepting the testimony of Lawrence as to the distances of the two cars immediately following his course, the second car, or the one furtherest removed, was at a distance of 150 to 200 feet in his rear at the time he made his last observation, which was at least 120 feet before he actually began his left-hand turn. It is, therefore, mathematically certain, according full credence to Lawrence’s testimony, that the Carroll car must have turned into its left-hand lane not perceptibly later than the moment at which Lawrence ceased making his observation and must, therefore, have been in view during all, or practically all, of the time in which Lawrence was driving 120 feet at 20 miles per hour. Under this circumstance, the conclusion is inescapable that Lawrence was guilty of negligence in failing to make prudent and reasonable observation to his rear, which observation would have disclosed the approach of the Carroll car in the east lane of the highway.
It is apparent, from a reading of the opinion of the district judge, and from the'argument and brief of counsel for defendant, that great reliance in support of' *341 defendant’s position is placed in the holding of this court in the recent case of Paggett v. Travelers Indemnity Company, La. App., 99 So.2d 173, 175, in which the factual circumstances were remarkably similar to those in the instant case. However, despite this similarity, there are some controlling distinctions between the two cases. The rate of speed of the passing car in the Paggett case, contrary to our finding in the instant case, was fixed as being well in excess of the legal maximum limit of 60 miles per hour and was variously estimated as between 60 and 80 miles per hour. However, the most important distinction is found in the observation of our opinion in the Paggett case, established by the testimony that as the driver “ * * * began to make an angling left-hand turn upon nearing the intersecting road, no other approaching vehicles were in view.”
It would scarcely seem necessary to reemphasize the finding in the instant case that Lawrence made no observation to his rear while moving a distance of 120 feet at 20 miles per hour before making his “fast” left-hand turn across the highway. It follows that this action constituted negligence of such nature as to be a concurring cause of the accident.
The question of the quantum of award to which plaintiff is entitled involves that somewhat vague and always troublesome evaluation of damages in cases involving what is known as a whiplash type of injury. Plaintiff makes no claim for loss of wages or permanent disability, and bases her damages exclusively upon the item of pain and suffering, both past and future. After confinement in a hospital for some twelve days plaintiff was practically totally incapacitated for an additional period of six or seven weeks, after which time she returned to work as a store clerk. Her employment has been interrupted on a number of occasions by absences of from one to several days, and plaintiff’s testimony, supported by that of her treating and examining physicians, is sufficient to establish the fact that she has suffered, and will continue to suffer, some degree of pain and discomfort as the result of what was described in the medical testimony as a moderately severe whiplash injury. At the time of trial, some six months following the accident, plaintiff testified that she continued to suffer pain, varying in degree from severe to moderate; that she was frequently incapacitated from performing any of her household duties at the end of her day’s work and that she was particularly uncomfortable at night. According to the medical testimony this suffering and discomfort might reasonably be expected to continue for an additional six months, and one of the doctors further testified that some degree of pain might be expected to occur at intervals for the balance of plaintiff’s life. The measure of damages under these circumstances is extremely difficult of evaluation, and, again, we must reiterate the pronouncement that each case must be adjudged on the basis of the facts established therein. Considering all the testimony on this point, we are inclined to feel in the instant case that plaintiff’s pain and discomfort would not endure for a period of more than a year following the occurrence of the accident, and, as a consequence, we are of the opinion that the sum of $3,-500 constitutes an adequate allowance.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
It is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Martha Anderson Lawrence, and against the defendant, Great American Indemnity Company of New York, in the full sum of $3,500, with interest at the legal rate from date of judicial demand, together with all costs.