113 So.2d 489 (1959)
Edwin S. STEADMAN, Plaintiff-Appellant,
v.
AMERICAN FIDELITY & CASUALTY COMPANY, Inc., et al., Defendants-Appellees.
No. 9052.
Court of Appeal of Louisiana, Second Circuit.
June 15, 1959.
Rehearing Denied July 3, 1959.
*490 John D. Caruthers, Jr., Shreveport, for appellant.
Jackson, Smith, Mayer & Kennedy, Shreveport, for appellees.
GLADNEY, Judge.
This suit is for the recovery of damages occasioned by a vehicular collision in Shreveport, on January 11, 1958. The defendants are Mrs. Durham Mathews and her insurer, American Fidelity & Casualty Company, Inc. The jury, before whom the case was tried, rendered a verdict in favor of plaintiff in the sum of $3,467, and being aggrieved, he has appealed to this court for the purpose of securing an increase in the award.
On the above-stated date at about 10 o'clock A.M. Edwin S. Steadman, the appellant herein, was traveling south on Market Street in his Packard sedan, and reached the intersection of Texas Street. The evidence reveals that: traffic at the intersection, due to its density, was being controlled by a police officer who was standing at or near the northeast corner of said intersection; upon direction of the officer, plaintiff, who had stopped upon arriving at the intersection, continued into the intersection for the purpose of proceeding south on Market Street; at the time traffic between Texas Street and Milam Street, which street is one block south and parallel to Texas Street, was congested and in a continuous *491 line for the length of the block; and as Steadman moved near the center of the intersection at a very low rate of speed, approximately five miles per hour, he came to a stop before reaching the pedestrian walk on the south side of the intersection. While in this position his car was struck violently from the rear by a heavily loaded truck driven by Henry Jackson, an employee of one of the defendants, Mrs. Durham Mathews. As a result of the collision plaintiff sustained a whiplash type of injury to his neck and back and damage was caused to his automobile.
The driver of defendant's vehicle was charged with negligence in several particulars, but principally for failure to maintain a proper lookout, maintain his vehicle under proper control, and with having defective brakes. With merit, counsel for appellant argues the circumstances present a case which calls for application of the doctrine of res ipsa loquitur. The defendants aver the collision was caused by a sudden and unexpected stop made by plaintiff without any signal or warning thereof, and upon these grounds, a special plea of contributory negligence is predicated.
We find no basis upon which to sustain charges that the driver of the forward vehicle was negligent. This conclusion is supported by the testimony of plaintiff and Police Officer James Nathan Collinsworth, and is not seriously controverted by the testimony of Henry Jackson and Luther Jackson, witnesses for the defendants. The evidence shows there was no sudden stop by Steadman, but that Jackson was following too closely and although proceeding at a very slow rate of speed he did not have his vehicle under proper control. There is also some evidence the brakes of the truck were not operating efficiently. Under these circumstances as presented, the failure to give a signal or warning to following traffic was unnecessary. The accident was caused solely by the failure of Henry Jackson to have his heavily loaded truck under proper control. Although it had been raining and the street was wet, there was no interference with the vision of Jackson and we cannot excuse his failure to avoid striking the car in front of him.
This is a case in which the doctrine of res ipsa loquitur may be applied. Loprestie v. Roy Motors, Inc., 1938, 191 La. 239, 185 So. 11, 13. After stating the reasons for the rule, the court said:
"In the case at bar, plaintiffs were in the forward car, with their backs turned to the following car, when the crash occurred in the rear of plaintiff's car. The accident occurred in day-light, on a straight paved road, without any obstruction to the view of the occupants of the following car. An accident of this kind does not occur ordinarily when due care has been exercised; and, under the circumstances of the case, it must be assumed that defendants were fully informed of the cause of the accident, while plaintiffs clearly did not have such information. Under such a state of facts, the presumption of negligence arises from the fact itself of the accidentres ipsa loquitur."
The rule can find application only when the facts of the case justify its application. Thus, in Watkins v. Gulf Refining Company, 1944, 206 La. 942, 20 So.2d 273, 275, the Supreme Court stated the rule and its limitations to be:
"The jurisprudence is clear that where damages are caused by an instrumentality under the exclusive control of a defendant and they would not ordinarily have occurred if the party having control thereof had used proper care, the doctrine of res ipsa loquitur applies. Ross v. Tynes, La.App., 14 So.2d 80; Ortego et al. v. Nehi Bottling Works et al., 199 La. 599, 6 So.2d 677; Nuss v. MacKenzie, La.App., 4 So.2d 845; Gulf Ins. Co. v. Temple, La.App., 187 So. 814; Jones v. Shell *492 Petroleum Co., 185 La. 1067, 171 So. 447; and Gershner v. Gulf Refining Co., La.App., 171 So. 399.
"Under this principle of law, the evidence showing the happening of the accident and the resulting damages establishes a prima facie case and the burden is placed upon a defendant to exculpate itself from fault. Joynes v. Valloft & Dreaux, La.App., 1 So.2d 108; Royal Ins. Co. v. Collard Motors, La.App., 179 So. 108; Dotson v. Louisiana Cent. Lbr. Co., 144 La. 78, 80 So. 205; and Noble v. Southland Lumber Co., 4 La.App. 281.
"The defendant in a damage suit coming under the doctrine of res ipsa loquitur must show that he did not do anything that he should not have done, that he left undone nothing he should have done and that he neglected no legal duty owed to the plaintiff. Vargas v. Blue Seal Bottling Works, 12 La.App. 652, 126 So. 707; Horrell et al. v. Gulf & Valley Cotton Oil Co., 15 La.App. 603, 131 So. 709 * * *."
In Morales v. Employers' Liability Assurance Corporation, Ltd., 1943, 202 La. 755, 12 So.2d 804, 808, the following pertinent comment was made:
"It is fundamental that negligence is never presumed from the happening of an accident, but the happening of an accident with its attendant circumstances may justify the inference of negligence. Jones v. Shell Petroleum Corporation, 185 La. 1067, 171 So. 447.
"To render the doctrine applicable in an automobile accident, the accident must be one which ordinarily could not happen except through defects in the car or fault in its operation, or both. But the doctrine applies only where the circumstances leave no room for a different presumption, and it must appear that the probable cause was within the control of the operator of the automobile against whom the doctrine is sought to be invoked. 5 Am.Jur., Automobiles, § 607, p. 839."
The undisputed testimony shows plaintiff's vehicle was moving at an extremely low rate of speed when he brought it to a stop and was struck by the truck which was following a very short distance behind. Under these circumstances, in our opinion, the doctrine of res ipsa loquitur is applicable. The effect of this holding is to impose upon the defendant driver the responsibility of exculpating himself from blame by showing freedom from fault. This has not been done and we find actionable negligence has been proven.
The principal issue concerns the amount of damages which should be allowed for plaintiff, who, according to the record, experienced severe pain which continued from the date of the accident on January 11, 1958, through the date of trial on March 4, 1959, at which time his treating physician testified that no further relief could, in his opinion, be obtained from medical attention, and plaintiff would have to live with and endeavor to adjust himself to his condition characterized by a stiff back with intermittent pain.
Upon the impact of the two vehicles, plaintiff sustained a stretching or sprain of the muscles in the cervical and lumbosacral regions, and was bruised to some extent about the rib cage when his chest struck the steering wheel. Steadman, following the accident, was hospitalized from January 11 to January 14, 1958; then again on December 18 to December 25, 1958, at which time he was subjected to an operation for the purpose of relieving his back pain. He received thirteen physiotherapy treatments from January 27 to February 10, 1959. From January 11th through April, 1958, he regularly wore a neck collar, a back brace, and slept with heavy traction for the purpose of relieving the pain in his neck and in his back. Most of the neck pain had disappeared by March 18, 1958, and plaintiff experienced pain in the *493 cervical region only occasionally, usually when he would turn his head; but from March 18 until December 18, 1958, he suffered from considerable discomfort in the lower region of his back, which Dr. Macpherson, orthopedist and treating physician, testified that as of May 29th was evidenced by muscle spasm. During the summer months the pain eased to some extent and plaintiff was able to discard his back brace, but he continued to complain of intermittent "burning sensations" in the lower back region. On October 31, 1958, Dr. Macpherson injected into the sacrospinalis muscles a pain-relieving drug, hydrocortone, which gave relief for a short period of time. This, according to the doctor, indicated the source of plaintiff's pain was exclusively in the muscles. When the pain persisted, however, Dr. Macpherson, after consultation with Dr. T. M. Oxford, orthopedist, advised surgical procedure to incise the fascia. Dr. Macpherson testified that the fascia is a sheath or covering over the group of sacrospinalis muscles which support the bony structure of the back. The operation was performed on December 18, 1958, at the Schumpert Memorial Hospital, under general anaesthesia. Incision was made through the skin and the fascia which was about one-eighth of an inch in thickness was cut with scissors. When incised this muscle split and separated approximately three-fourths of an inch, which fact, according to the surgeon, indicated the muscle had been under considerable tension. It was thought that by reason of the operation the patient would be relieved of further pain, but this was not the case. He was admitted to the hospital again on February 6th for the purpose of securing relief from the pain which he continued to experience. Later he received extensive physiotherapy treatments which consisted of stretching exercises and heat applied to the lower back. After this failed to improve the patient, his physician reached the conclusion that nothing further could be done to relieve the back pain although he was of the opinion there would be some improvement in time.
Plaintiff was examined at the request of defendant by Dr. Ray E. King on November 17, 1958, which was prior to the operation on December 18th, and again on February 24, 1959, shortly before the trial. Dr. King testified that on his first examination he found no objective symptoms to substantiate the complaints. Dr. King, also an orthopedist, noted the operative scar when he examined plaintiff the second time. On both occasions Dr. King found tenderness. Dr. Oxford likewise found no objective symptoms. It should be noted with respect to the testimony of Drs. King and Oxford the medical evidence indicates the pain experienced by plaintiff is entirely due to a condition of the muscles, and the only objective indication of such pain susceptible of observation is muscle spasm. Dr. Macpherson testified that he found muscle spasm as late as May 29, 1958.
Mrs. Marilyn Steadman, the wife of plaintiff, and herself a trained nurse, testified as to pain suffered by her husband over this long period of time, and his use of traction and other prosthetic devices for relief. Other testimony was given by James E. Herndon, a close friend of plaintiff's. Herndon, a vocational rehabilitation counselor, testified as to his observation of plaintiff in pain.
As a result of injuries sustained by him in the accident, plaintiff has foregone many activities which he formerly enjoyed, including tennis, golf, and fishing, and a Sunday School class. Due to his confinement for a period of approximately four months, he testified he was forced to decline business offered to him that would have been remunerative and he detailed these amounts.
No definite rule can be formulated for the definite ascertainment of damages in personal injury cases and each award must be determined from the peculiar facts of *494 each case. However, courts should endeavor to maintain a degree of uniformity so far as possible and practicable to the end that awards will not be out of proportion one with the other. Currie v. Government Employees Insurance Company, La. App.1956, 90 So.2d 482.
Plaintiff's claim is for property damage to his automobile of $243.27, medical expenses of $1,223.95, loss of earnings of $2,246, and the remainder for pain, suffering and future disability, counsel for plaintiff contending entitlement to a total award of $14,467.
Our attention has been directed to the remarks of the trial judge in declining to sustain a motion of additur which counsel for plaintiff filed following rendition of the jury verdict, and in which the trial judge indicated he was of the opinion the plaintiff was entitled to more than the amount fixed by the jury. We find it unnecessary to give consideration to the motion or the reaction thereon by the district court, inasmuch as this court has authority under its appellate jurisdiction to alter the award of a jury if justified by the evidence. We have, however, resolved that appellant is entitled to an increase.
Proof of the damage to plaintiff's automobile and medical expenses incurred is not contested and for these items claimant is clearly entitled to recover $1,467.22.
We find also there is satisfactory proof of plaintiff's loss of earnings during his incapacity from January 1st through April, 1958. The evidence adduced, we think, clearly shows that plaintiff sustained a loss of $2,000, represented by a diminution of income and the loss of four new accounts totaling $1,050, and which was due to disability occasioned by the accident. In the testimony of plaintiff the loss was definitely evalued, and accordingly the sum of $2,000 will be allowed.
Our further consideration relates to damages for pain and suffering. The extensive treatment administered and severity of pain endured, coupled with the testimony of the treating physician that plaintiff would have to learn to live with his condition, justify, in our opinion, an increase of the jury verdict. It is our opinion plaintiff should receive for pain and suffering the sum of $6,000. Such an award does not seem to be out of line with those sustained in Bartholomaus v. H. G. Hill Stores, Inc., La.App.1957, 97 So.2d 82, and Marcantel v. Southern Farm Bureau Casualty Insurance Company, La.App.1958, 102 So.2d 879.
The judgment from which appealed is increased to the sum of $9,467.22, and as so amended, is affirmed at appellees' cost.