125 So.2d 474 (1960)
Austin LANDRY, Plaintiff and Appellee-Appellant,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant and Appellant-Appellee.
No. 115.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1960.
Rehearing Denied January 11, 1961.
Davidson, Meaux, Onebane & Donohoe, by James E. Diaz, Lafayette, for defendant-appellant.
Edwards & Edwards, by Nolan J. Edwards, Crowley, for plaintiff-appellee.
Before FRUGE, CULPEPPER and TATE, JJ.
CULPEPPER, Judge.
This is a suit for damages for personal injuries sustained by the plaintiff as the result of a rear end collision caused by the negligence of the defendant, Mrs. Manuel Petit jean, who was driving an automobile belonging to the defendant, Mr. Manuel Petitjean, and on which the defendant, Southern Farm Bureau Casualty Insurance Company, carried public liability insurance. The defendants admitted liability and the matter was presented to the lower court solely on the question of quantum of damages. Judgment was rendered in favor of the plaintiff and against the defendant insurer for the total sum of $5,070.58, of which $4,500 was for personal injuries and $570.58 was for medical expenses and other special damages incurred. From this judgment, the defendant has appealed, asking that the amount of the award in the sum of $4,500 for personal injuries be reduced and also that the bill of Dr. Robert C. L. Robertson in the sum of $100 be reduced as being unreasonable. The plaintiff has answered the appeal, asking an increase in said judgment for personal injuries.
*475 The record shows that on December 2, 1958, at approximately 4:00 o'clock p.m., the plaintiff was stopped behind several other cars at a traffic light in the City of Rayne, Louisiana, when he was suddenly struck from the rear by an automobile being driven by the defendant, Mrs. Manuel Petitjean. Plaintiff testified that immediately after the accident he did not feel any pain, but within an hour he began to feel a stiffness and burning sensation in his neck and went to see Dr. Bertinot, his family physician in Sunset, Louisiana. Dr. Bertinot immediately sent plaintiff to the hospital in Lafayette where he was seen about 9:00 o'clock that night by Dr. William L. Meuleman, an orthopedic specialist of Lafayette. Dr. Meuleman's diagnosis at the time was a severe whiplash injury for which he prescribed traction and medicines for pain and muscle relaxation. Plaintiff remained in the hospital in traction for a period of three days, and then, at his own request and against the advice of Dr. Meuleman, he left the hospital to return to work, but the pain was such that after three days he had to return to the hospital where he remained for another four or five days under the same treatment which Dr. Meuleman had previously prescribed. On leaving the hospital the second time, plaintiff was fitted with a brace which immobilized his neck and held his chin up. For the next twelve weeks plaintiff wore this brace and continued to take medicines for pain and muscle relaxation and was seen by Dr. Meuleman every two weeks through June of 1959. Dr. Meuleman testified that in June of 1959 he found that the plaintiff had improved considerably, the muscle spasm had disappeared and the doctor could find no other objective symptoms of injury. However, the plaintiff continued to complain and, in view of the history of this injury, Dr. Meuleman considered the complaints to be genuine and continued to see and treat him. Plaintiff was last examined by Dr. Meuleman on December 6, 1959, at which time the plaintiff complained of recurring headaches, stiffness of the neck muscles, and also some decrease in sensation along the ulna nerve to the left arm. Dr. Meuleman still could find no objective symptoms, there was no muscle spasm, and the cervical curve was normal, which in the opinion of Dr. Meuleman, indicated that no serious injury to that area had been sustained. X-rays were negative for disc injury. Objectively, Dr. Meuleman could find nothing to restrict the range of motion of the neck muscles, but plaintiff would not move these muscles to their full range. It is apparent from Dr. Meuleman's testimony that he did not think plaintiff's complaints as of December 6, 1959, were very serious, although he did believe that these complaints were genuine. We find Dr. Meuleman testifying as follows:
"A. June 16th was the date, yes, sir, that's right.
"Q. And after that time there was no muscle spasm? A. That's right.
"Q. Doctor, the fact that there was no muscle spasm or muscle tightness, wouldn't that indicate that there was not a sufficient pain element or discomfort to impair the use of the neck to a serious degree? A. Well, that has been my contention beyond that date, that while I am willing to admit having seen him initially, undoubtedly he must have some aching and pain, but I would put that as I told him, of a minor nature and one that could easily be compatible with any one of us here having the same thing after a hard day's work or something of that sort.
"Q. In other words, Doctor, for all practical purposes he was cured as a result of the accident about June 16th, 1959? A. As near as I could find, his period of disability extended on my examination from 2 December '58 to the examination of the 16th of June, 1959."
Plaintiff also presented the testimony of Dr. Robert C. L. Robertson, a neurosurgeon of Houston, Texas, who saw plaintiff on only one occasion, July 24, 1959. Dr. Robertson *476 took plaintiff's history and made a thorough neurological examination, after which his diagnosis was that plaintiff had a "chronic cervical muscle strain with marked spasm of the muscle." Dr. Robertson further testified that he thought plaintiff had sustained a "moderately severe" whiplash injury. It was Dr. Robertson's recommendation on that occasion that plaintiff be hospitalized for conservative treatment including traction and physiotherapy, but, as far as the record shows, the plaintiff did not follow this recommended treatment. Dr. Robertson opined that there might be possible nerve root pressure, but he could not diagnose such a condition without a myelogram. Dr. Robertson found x-rays negative and also found the cervical curve to be normal. Dr. Robertson would give no opinion as to how long plaintiff would continue to have these objective symptoms of pain and muscle spasm which he found in July of 1959. He stated that, in his opinion, there aren't any rules that he has been able to develop about whiplash injuries because they vary so much in character and degree.
At the request of counsel for the defendant, the plaintiff was examined by Dr. Joseph M. Edelman, an orthopedic specialist of Baton Rouge, Louisiana, on September 14, 1959. Dr. Edelman found the x-rays taken at his request were negative as to any abnormality in the cervical spine. He found no muscle spasm, he found the cervical curve to be normal, and he felt that plaintiff's limitation of motion of the neck muscles was entirely voluntary. It was Dr. Edelman's conclusion that plaintiff had suffered a cervical sprain from which he had made a good recovery and showed no residual symptoms.
On January 12, 1960, plaintiff was examined by Dr. James Gilly, an orthopedic surgeon of Lafayette, Louisiana, at the request of counsel for the defendant. Dr. Gilly found no muscle spasm, found the cervical curve normal and concluded that there were no positive objective symptoms for plaintiff's complaints. Dr. Gilly testified that on this examination, plaintiff would not move his neck muscles to any degree whatever, but he thought that this was entirely voluntary. Dr. Gilly was not very well satisfied with his examination because of what he called the plaintiff's failure to cooperate. We find Dr. Gilly testifying as follows:
"A. I felt that the patient was rather difficult to evaluate and over a period of thirteen (13) months after his injury I would not expect the marked stiffness and restriction of movement which he showed to be present, particularly in the absence of muscular spasm, and I felt that restriction, some of the restriction was voluntary. The loss of sensation also followed in some respects the course of the ulna nerve and this, of course, was completely subjective. I felt that this was an instance of a patient who probably had something wrong with him but was trying to impress me and in trying to impress me only served to confuse me.
"Q. Doctor, with the degree of restriction of motion which this man exhibited, would you have expected the x-rays to have disclosed a straightening of the cervical curve? A. Yes.
"Q. Would you have also expected, Doctor, to find muscle spasm? A. Either muscle spasm or muscle contraction.
"Q. And you found neither one of these? A. That is correct."
On the trial of this case on March 10, 1960, the plaintiff testified that he was still suffering from severe pain in his neck muscles. He stated that although it was less severe in the morning, it became much worse after a hard day's work driving an automobile or sitting at his typewriter, but that the pain was continuous to the extent that he could not move his neck and couldn't sleep at night. On being requested by counsel for the defendant to demonstrate in the courtroom the extent to which he could move his neck, the plaintiff, as indicated *477 by the judge's statement in the record, "does not move his neck at all, but moves his entire body slowly to the right and left * * *".
In his written reasons for judgment, the judge of the lower court found from the testimony of the expert medical witnesses that there was no justification for the plaintiff's present complaints of pain, stiffness in the neck and shoulders and numbness in the left arm, and consequently, he found no residual disability. However, the lower court found that the plaintiff did suffer considerably at the time of his injury and for some time thereafter, that he wore a neck brace for twelve weeks and that he had acute pain and disability at least for a period of six months.
Of course, Dr. Robertson testified that he found objective symptoms of muscle spasm and pain in July of 1959, which was seven months after the injury, but Dr. Edelman, who examined the plaintiff in September, and Dr. Gilly, who examined the plaintiff in January of 1960, testified that they felt the plaintiff had completely recovered. Dr. Meuleman, who was the treating physician and followed plaintiff's progress from the inception of the injury, testified that as of December, 1959, which was one year after the injury, he could find no clinical basis for plaintiff's complaints but he did believe they were genuine although he stated that he thought they were very minimal and no more than would be compatible with the complaints that a normal person might have after a hard day's work. None of the doctors gave any opinion that they thought these residual complaints, if any, would continue beyond a period of a year after the date of the accident.
In urging that the award for personal injuries be increased from $4,500, the plaintiff first cites the case of Baker v. United States Fire Insurance Company, La.App. 1 Cir. 1956, 89 So.2d 405, in which the court awarded $5,600, but the opinion in that case indicates that the court found no manifest error in the jury's award where there was medical testimony that the plaintiff had suffered a 15% total and permanent disability to the musculature of the neck. Plaintiff also cites the case of Bartholomaus v. H. G. Hillstores, La.App. Orleans 1957, 97 So.2d 82, but in that case, in addition to a whiplash injury, the plaintiff suffered bruises and contusions and a lumbosacral strain from which she was still suffering pain two years after the injury. The court awarded $6,000.
Plaintiff cites Steadman v. American Fidelity & Casualty Company, La.App. 2 Cir. 1959, 113 So.2d 489, in which the court awarded $6,000, but in that case the plaintiff also had a bruised rib cage and a lumbosacral strain in addition to the whiplash injury. Approximately eleven months after the accident, surgery was performed in an effort to relieve the pain in the lumbosacral area, but the operation was not entirely successful and the medical evidence indicated that she would have some residual pain for the rest of her life.
In the case of Marcantel v. Southern Farm Bureau Casualty Insurance Company, La.App. 1 Cir. 1958, 102 So.2d 879, the court awarded $10,000 for past and future pain and suffering where the plaintiff suffered a possible disc injury and at least suffered a severe lumbosacral strain which completely incapacitated him from working as a carpenter for one year and partially incapacitated him up until the date of the trial 2½ years after the accident. In addition, plaintiff had suffered severely as a result of a myelogram for approximately forty-eight hours.
From the above brief review of the cases cited by plaintiff, it is clearly demonstrated that the injuries suffered in those cases were much more severe than the whiplash injury suffered by the plaintiff in the instant case. In all of the cases cited by plaintiff, there were other injuries, either in addition to a whiplash injury or more severe than a whiplash injury
It is well recognized in our jurisprudence that awards made in similar cases *478 should be considered by the courts so that, within the limits permitted by particular states of facts, a degree of uniformity will be maintained to the end that awards will not be out of all proportion one with the other. Wainwright v. Globe Indemnity Company, La.App., 75 So.2d 554; Cavicchi v. Gaiety Amusement Company, Inc., La. App., 173 So. 458; Hare v. Amsterdam Casualty Company, La.App., 1 So.2d 439. We have, therefore, considered several recent cases where the sole finding was a whiplash injury. In Lampkin v. United States Fidelity & Guaranty Company, La. App. 2 Cir., 1958, 99 So.2d 147, a thirty-seven year old woman sustained a moderately severe whiplash injury, she was hospitalized for a period of ten days, then was placed in traction and her disability lasted for nine months, and the court awarded $2,500. In Costanza v. Great American Indemnity Company, La.App. 2 Cir. 1956, 88 So.2d 393, the court awarded $2,500 where a nurse sustained a whiplash injury which required hospitalization for eight days in traction following which plaintiff wore a neck brace for six weeks, took diathermy treatments and was disabled from working for a period of approximately one year, and was still complaining of pain at the time of the trial, and the court felt that she would have more pain for an indefinite period. In Downs v. Hartford Accident & Indemnity Company, La.App. 2 Cir. 1959, 116 So. 2d 712, the court awarded $3,000 to an attorney who sustained a moderately severe whiplash injury from which he suffered considerable pain for nine months to the date of trial and the doctor estimated that he would continue to have paid for another four to six months. In Lawrence v. Great American Indemnity Company of New York, La.App., 107 So.2d 338, the court awarded $3,500 where the plaintiff sustained a moderately severe whiplash injury which resulted in her confinement in the hospital for twelve days and where she was totally incapacitated for an additional period of six to seven weeks and who suffered pain and discomfort for approximately one year after the occurrence of the accident.
It would serve no useful purpose to review the many other cases involving moderately severe whiplash injuries such as the one sustained by the plaintiff in the instant case. It is our opinion that an award of $3,500 is more in keeping with the recent jurisprudence on this type of injury.
With regard to the bill of Dr. Robert C. L. Robertson in the sum of $100, we agree with the trial court that there is no showing in the record that it is unreasonable.
For the reasons hereinabove set forth, the judgment from which this appeal was taken is amended so as to reduce the amount of the award for personal injuries from $4,500 to $3,500 making the total judgment in plaintiff's favor in the sum of $4,070.58, plus legal interest and court costs. Costs of this appeal are assessed against the plaintiff and the defendant in the proportion of one-half each.
Amended and affirmed.