102 So.2d 879 (1958)
John A. MARCANTEL, Plaintiff-Appellee,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Defendant-Appellant.
No. 4626.
Court of Appeal of Louisiana, First Circuit.
May 26, 1958.
*880 Plauche & Plauche, Lake Charles, Walter C. Peters, Jennings, for appellant.
Bernard N. Marcantel, Jennings, Alfred R. Ryder, Oberlin, for appellee.
ELLIS, Judge.
The defendant, as the insurer of Mrs. C. W. Rostrom, has appealed from a judgment condemning it to pay damages to the plaintiff, as the result of an automobile collision between the car owned and operated by Mrs. Rostrom and a pick-up truck owned and being operated by the plaintiff between 5:30 and 6:00 A.M. on October 25, 1955, on U.S. Highway 165 at a point approximately three miles south of Kinder, Louisiana.
The plaintiff has answered the appeal requesting an increase in the award of the District Court for loss of wages for the entire year of 1956 and for six months in 1957, and for loss of future earnings based on an alleged reduced earning capacity for plaintiff's life expectancy of 20 years, discounted at 6%, and for the cost of medical treatment to plaintiff because of an alleged neck injury suffered in the accident.
Between the hours of 5:30 and 6:00 A. M. on October 25, 1955 plaintiff and three guest passengers, all occupying the one seat of plaintiff's pick-up truck, were proceeding south on U.S. Highway 165 and when they had reached a point where the highway is intersected by a gravel road known *881 as the parish line road, they became involved in a head-on collision with the automobile of Mrs. C. W. Rostrom which was proceeding in a northerly direction at the time. There is no dispute about the fact that the actual collision occurred in plaintiff's west or south bound traffic lane.
In view of the fact that Mrs. Rostrom drove her car into the traffic lane of the plaintiff, such a fact makes a prima facie case of negligence against her, and, therefore, it was incumbent upon the defendant to show by clear and convincing evidence that Mrs. Rostrom's sudden presence in plaintiff's traffic lane was due to unexpected and unforeseen circumstances over which she had no control and that she did not in any particular contribute to the accident or that there were justifiable circumstances which would excuse Mrs. Rostrom's conduct. See LSA-R.S. 32:233, Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So.2d 396; Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671; Rizley v. Cutrer, 232 La. 655, 95 So. 2d 139.
According to plaintiff's contention and version, Mrs. Rostrom, just prior to the collision, attempted to pass a large van and was unable to complete the passing maneuver and return to her proper lane of travel in time to avert the collision.
The defendant contends, based on Mrs. Rostrom's version, that there were justifiable circumstances which excused Mrs. Rostrom's conduct in driving her automobile into the plaintiff's lane of travel. Mrs. Rostrom stated that she had successfully passed the big van and returned to her proper north bound lane of travel when the plaintiff reached a point 270 feet north of the intersection of the parish line road with the highway, and crossed a spur track which ran diagonally across the highway, at which time plaintiff apparently lost control of his truck and came over into her lane of travel, and in order to avoid what she considered a certain collision she drove her car to the left into the north bound or westerly traffic lane, but plaintiff immediately thereafter pulled his car back to the right or north bound traffic lane and the two cars collided in the latter lane. It is therefore clear that she contends that the plaintiff created an emergency and her action in pulling into the north bound traffic lane under the facts and circumstances was justifiable and excused her under the law.
We think counsel for defendant in his brief has succinctly stated the obstacles which he must overcome in order to secure a reversal of the judgment of the District Court on the question of liability, and we quote:
"The defendants in this case most certainly have a tight fight with a short stick. This is true for several reasons;
"(1) The plaintiff has the numerical advantage in witnesses;
"(2) The Trial Judge did not accept the testimony of Eger Fontenot; and
"(3) The actual impact took place in the plaintiff's lane of traffic."
Counsel for defendant then poses as the main question necessary for a correct decision in this case, the following:
"It is obviously of the greatest importance to determine how far ahead of the van truck Mrs. Rostrom was when the accident occurred. If she was well ahead of it, there would have been no reason for her to have been in the left traffic lane. This also discredits entirely the testimony of the plaintiff's witnesses. Moreover, if Mrs. Rostrom was some distance ahead of the van truck, it would have come by the two wrecked vehicles several moments after the collision. In other words, the time that the van truck passed the wreck is the key factor in determining how far ahead Mrs. Rostrom was ahead of the van truck."
Counsel for defendant contends that the trial court erred in not accepting the testimony of Mrs. Rostrom that she had completely and successfully passed the van and returned to her lane of traffic, when she *882 discovered that the plaintiff had lost control of his pick-up truck, and in order to avoid a collision in her lane of travel she pulled to her left and into the north bound lane of travel, and the testimony of one Eger Fontenot, whom the lower court, in his reasons dictated into the record, stated was not worthy of belief. Fontenot testified that he was parked east of the highway facing north and heard the collision, which was to his southwest, and he looked out of the window of his car but could not see the wreck and got out of his car and looked and saw the pick-up truck of the plaintiff and the car of Mrs. Rostrom which had collided as previously described, and at that time he saw the van coming. He estimated that the van passed two to three seconds up to one minute after the actual collision. He also testified that he did not go over to the wreck. This witness also testified on the 28th day of March, 1957 on the re-trial of the exception to the jurisdiction of the Allen Parish Division of Court and again on the trial of the case on July 2, 1957, and on the later date his testimony appears to be much more in detail and fuller. For instance, the first time he testified he does not mention anything about seeing the truck of the plaintiff zig-zagging after it crossed the railroad spur track, whereas, on the second trial he testified somewhat in detail and positively that he had seen this truck when it crossed the railroad track begin to zig-zag back and forth on the highway. He did not remember who picked him up on that morning but finally stated that he thought it was "that water truck." Counsel for the defendant then asked him who drove it and he stated, "A fellow by the name of Cleve Dyer." and counsel then asked him "Where is he?" and he answered, "He's dead." He was then asked by counsel for defendant, "What do you mean `he's dead,' why do you say that?" Answer: "Well, he worked with the company there and then he went with the company when they left; they went to Arkansas, so he followed the job over there and he was still over there when they left." After the above testimony under questioning by counsel for defendant, he then said that it could have been "the boss man, a fellow by the name of Vance that was foreman * * *" that had picked him up that morning and he next proceeded to say, "That's something I didn't keep track of, I really don't remember." On the second trial Fontenot denied seeing anyone he knew around the wreck, whereas on the first trial, or rather the trial of the exception, he testified that he saw his sister-in-law, Mrs. Eunice Guillory of Fenton, Louisiana, turn around in her station wagon at the scene of the wreck. Fontenot's testimony on the whole is most unimpressive.
Counsel for defendant point out in his brief discrepancies or differences in the testimony of plaintiff and his passengers as to the location of the van at the time of the impact or collision. None of them placed the van in the exact same position, however, each and every one strenuously denied that Mrs. Rostrom ever passed the van so as to be able to pull back into her own lane of travel. Whether Mrs. Rostrom was near the near or side of the van or the center or the front or slightly forward of the front end of the van at the time of the impact, we are convinced that she did not get far enough ahead of the van to go back into her own lane of travel.
We believe as did the District Judge from all the evidence that Mrs. Rostrom made an unsuccessful attempt to pass this big van and misjudged the distance of plaintiff's truck lights. There is a physical fact which is strongly corroborative of plaintiff's version of the accident. The testimony of the witnesses as well as photographs of the two motor vehicles involved in the accident show that the right front portion of each bore the brunt of the collision. Mrs. Rostrom testified that she was pulling to her left in an attempt to get completely off of the highway and out of the way of the oncoming truck of plaintiff, and plaintiff testified that after the wreck he noticed the tracks made by her car and that for a distance of thirty-five or forty *883 feet she had veered to the left, which would have brought the right front of her car in contact with the right front of plaintiff's truck. Plaintiff could not have pulled to his right until he was within fifty feet of the intersection of the parish line road as the main highway was being widened, and under construction, and his side had been dug in order to widen the highway.
As to the quantum of damages, plaintiff has proven the total loss of his pick-up truck which was valued at $700.00 as of Oct. 25, 1955, and also is entitled to the wrecker fee of $25.50.
After the collision and accident plaintiff got out of his truck and the evidence is somewhat in conflict as to whether he walked around or merely stood by his truck, however, he was taken to the Clinic at Kinder, La., by the State Trooper. His complaint was of a low back injury, accompanied by severe pain, until approximately April 1956, when he complained of neck injury and severe pain between the shoulder blades. The District Court refused damages based upon any whip-lash injury because all of the doctors testified that the effect of such an injury would be felt immediately or within weeks. There was one doctor who testified that he had heard of cases which had not developed until several months. While we feel that the testimony of the doctors who examined this plaintiff from April 1956 and subsequently thereto, definitely established a basis for plaintiff's complaint of pain in the neck region, we do not believe that the District Court's refusal of damages to plaintiff for such an injury was manifestly erroneous for, as previously stated, all the doctors testified that he should have felt the effect and complained either immediately after or within weeks after the accident.
The evidence establishes that plaintiff had a congenital condition or abnormality of his back known as spondylolesis which is not the same as spondylolisthesis, for in the latter there is a moving or slipping of the vertebrae.
When plaintiff arrived at the Kinder Louisiana Clinic he was attended by Dr. J. W. Mayes, who submitted a report as a substitute for his testimony in which he stated that the plaintiff, "suffered lacerations to head, brush burns and contusions to right leg and pain in the sacro-illiac region." Plaintiff remained in this clinic for seven days and was then referred to Dr. Kingsley in Alexandria, Louisiana. Dr. Kingsley saw the plaintiff five different times and testified at length. He could find at no time any objective symptoms or reasons for plaintiff's complaints of severe pain and in his testimony gave detailed instances of tests which he stated disproved many of plaintiff's complaints. However, the preponderance of the medical testimony, as stated by the District Court, is to the contrary. Plaintiff was examined by Dr. George P. Schneider, Dr. Hargrove, Dr. Heinz K. Faludi, Dr. Edmond C. Campbell, Dr. Norman P. Morin, Dr. George B. Briel, all of whom found some basis for plaintiff's complaint of low back pain such as muscle spasm, although it is true that the various doctors expressed varying opinions as to the degree of severity of such muscle spasms. For example, it ranged from "severe" to "mild". The preponderance of the medical testimony established the inability of the plaintiff to perform heavy carpentry work, during the year 1956, however the testimony of several doctors who examined plaintiff in 1957 was to the effect that he was suffering a mild back disability and they recommended an attempt to return to work.
Counsel for defendant contends that the plaintiff misled the doctors who examined him in that he denied having a previous back injury, when, as a matter of fact, Dr. Hargrove definitely testified that in October of 1954, which was one year prior to the accident, plaintiff complained to him of low back trouble and he prescribed a brace. There is no doubt but that plaintiff *884 did go to Dr. Hargrove for a complaint of low back pain, and there is no doubt that he did not tell the examining doctors about this, however, we do not believe this would change the establishment of a re-injury or aggravation of any previous condition of his back, in the accident and collision complained of in this case. It is shown that he worked without any complaints after October of 1954, and it was only after the collision in October of 1955 that he complained of injury again to his back.
The lower court awarded the plaintiff $12,000.00 for pain and suffering to date of trial and $3,000.00 for future pain and suffering. While there is no doubt that plaintiff suffered rather constantly with his back and very severely as a result of a myelogram for approximately 24 to 48 hours, there is substantial medical testimony that there was no basis for many of his complaints of pain in other regions of his body. His back injury was described as a possible disc injury, which the preponderance of the medical testimony is against, to a severe back strain to a mild back sprain. We believe that an award of $10,000.00 for past and future pain and suffering would be adequate under the facts of this case.
The District Court has analyzed plaintiff's claim for damages for loss of past and future earnings and we agree with the conclusion which he reached. We quote from his reasons dictated into the record:
"Plaintiff contended that he was entitled to damages for the loss of past earnings and for the loss of future earnings. At the conclusion of the first trial, it was this court's opinion that there was no evidence in the record sufficient to carry plaintiff's burden of proof to show the amount of wages lost, if any. Plaintiff moved to reopen the case which motion was first opposed by defense counsel, but later the objection was withdrawn.
"The additional evidence on this question was heard September 30, 1957. Plaintiff introduced his income tax returns from 1951 through and including 1956. This disclosed that plaintiff worked as a carpenter only about six months of each year in the years 1951 through 1954. For the year 1955, the year in which the accident occurred, plaintiff's average monthly earnings as a carpenter was $289.32 for the months prior to the accident.
"The evidence disclosed that the plaintiff and his wife have owned and operated a mercantile store in the town of Oberlin since 1949. Until the year 1956 the mercantile store operated without much, if any, profit. But in 1956, the year following the accident, the store made a profit of approximately $2,500.00. The income tax returns disclosed that during 1956 plaintiff paid approximately the same income tax as during the prior years.
"The testimony also disclosed that there are certain types of work which plaintiff is capable of performing without pain but which pay a smaller wage. For example, plaintiff could work as a night watchman. Plaintiff testified that he would not work on `public' jobs unless he could do the same type of work which he was performing prior to the accident. Plaintiff must make an attempt to minimize his loss of earnings and is not entitled to refuse work simply because he is unable to do the same type of hard manual labor that he could perform prior to the time of the accident.
"Considering the foregoing facts, plaintiff is entitled to the following sums for the loss of wages for the year 1955, $578.64; for the year 1956, $500.00; and for the year 1957, $250.00."
The lower court awarded plaintiff $1100.00 for medical expenses which counsel for defendant does not question, and $500.00 for future medical fees. As plaintiff had not completely recovered as of the date of the trial, although his condition was described as mildly disabling, with a recommendation of a return to work with recommendation of light duties in the beginning and recognition of the fact that *885 plaintiff would probably be sore due to the long period that he had not done any work, we believe that the award of $500.00 was reasonable.
It is therefore ordered that the judgment of the District Court be amended and plaintiff be awarded the sum of $10,000.00 for pain and suffering, $1100.00 medical expenses, $500.00 for future medical fees; $1328.64 for loss of earnings; $700.00 for the loss of his pick-up truck, and $25.50 wrecker fee, or a total judgment of $13,654.14.
Amended and affirmed.