LOTTINGER, Judge.
This is a suit in tort for damages resulting from an automobile accident in the City of Baton Rouge, Louisiana. The petitioner is Mrs. Hazel Cinquemano, who at the time of the accident was riding as a passenger in a 1962 Chevrolet automobile driven by her husband, Thomas Cinquemano. The defendants are Arthur M. O’Quinn, who was driving a 1963 Ford automobile, his employer, C. Wallace Construction Company, Inc., the owner of the automobile driven by O’Quinn, Trinity Universal Insurance Company, the liability insurance carrier on the vehicle driven by O’Quinn, Thomas Cinquemano, the driver of the vehicle in which petitioner was riding and his insurer, Hartford Accident and Indemnity Company. Mrs. Cinquemano sues for physical damages.
For purposes of trial this suit was consolidated with Suit No. 6483 which was filed by Hartford Accident and Indemnity Company against O’Quinn, C. Wallace Construction Company, Inc., and Trinity Universal Insurance Company for special damages in the sum of Five Hundred Thirty-three and °Jioo ($533.91) Dollars being the amount of damages to the Cinquemano vehicle paid by Hartford Accident and Indemnity Company to Mr. Cinquemano under the One Hundred and No/100 ($100.00) Dollars deductible insurance policy, and for which amount Hartford was subrogated.
Suit No. 6485 was filed by Thomas M. Cinquemano against Arthur M. O’Quinn, C. Wallace Construction Company, Inc. and the Trinity Universal Insurance Company for the sum of Nine Thousand Five Hundred Sixty and 7BAoo ($9,560.75) Dollars representing special damages.
The Lower Court rendered judgment in Suit No. 6484 in favor of Mrs. Cinquemano and against defendants Arthur M. O’Quinn, C. Wallace Construction Company, Inc. and the Trinity Universal Insurance Company in solido, in the sum of Twenty Thousand and No/100 ($20,000.00) Dollars, with interest and cost, and dismissed this suit as it bears against Hartford Accident and Indemnity Company.
In Suit No. 6483, the Lower Court rendered judgment in favor of Hartford Accident and Indemnity Company and against Arthur M. O’Quinn, C. Wallace Construction Company, Inc. and the Trinity Universal Insurance Company, in solido, in the sum of Five Hundred Thirty-three and 9%oo ($533.91) Dollars, with interest and cost.
In Suit No. 6485, the Lower Court granted judgment in favor of Mr. Cinquemano and against defendants Arthur M. O’Quinn, C. Wallace Plumbing Company, Inc. and Trinity Universal Insurance Company, jointly and in solido, in the sum of Four Thousand Twelve and 77Aoo ($4,012.77) Dollars, plus an additional sum of Two Thousand One Hundred Eighty and 20Aoo ($2,-180.20) Dollars for future medical and maid expenses, both sums with interest, and for cost.
Appropriate appeals, or answers to the appeals have been taken by all parties.
For purposes of brevity the merits of each case will be determined by this Court in this opinion, however, separate judgments will be rendered in Suit No. 6483 and 6485.
The facts immediately preceding the accident, and which are not in dispute are as follows:
On the morning of April 30, 1963, at approximately 6:30 o’clock A.M., the vehicles driven by Mr. Cinquemano and Mr. O’Quinn were each proceeding in a westerly direction along Government Street in the City of Baton Rouge, Louisiana. It was daylight, the traffic was extremely light, and the street was wet. Government Street is a four-laned paved street running in a *875 generally easterly and westerly direction. The two lanes for west bound traffic are separated from the two lanes for east bound traffic by a center line.
For some time prior to the accident both vehicles had been proceeding at a speed of approximately thirty miles per hour, the O’Quinn vehicle being in the inside lane at some distance in front of the Cinquemano vehicle which was proceeding on the outside lane, both vehicles proceeding in a westerly direction.
As the two vehicles approached Lovers Lane Drive, which intersects the northern side of Government Street, Mr. Cinque-mano, for some reason which is disputed in this suit, suddenly applied his brakes and veered to the right, the Cinquemano vehicle skidded for a distance of 123 feet and ran into a telephone pole which was situated some 18 to 24 inches from the curb at the northeast corner of said intersection. Mr. O’Quinn, one of the defendants in this suit, testified that for a distance of some miles prior to the accident he had been proceeding in the inside lane of traffic and was followed by the Cinquemano car in the outside lane at a distance of some 75 to 100 feet. Although there is some question raised as to whether Mr. O’Quinn intended to continue proceeding westerly along Government Street in order to take the ferry to Port Allen, or whether he intended to execute a right hand turn on Acadian Thruway which was some two blocks past Lovers Lane Drive, the testimony convinces us that the latter was true. Mr. O’Quinn testified that for a distance of approximately one mile prior to reaching the scene of the accident he made several attempts to run into the outside lane, however, as the Cin-quemano vehicle was only a short distance to his rear, such turn could not be made safely. He also stated that he did vary his speed from two to three miles per hour so as to either allow the Cinquemano vehicle to pass him or to leave the Cinquemano vehicle behind so that he could turn into the outside lane safely.
In any event Mr. O’Quinn testified that immediately before the accident he looked into his rear view mirror and saw the rear two-thirds of the Cinquemano vehicle which was at a distance of 75 to 100 feet to his rear. Apparently in order to get a better look at the following vehicle, he looked all the way around when he got to a distance of some two hundred feet before reaching Lovers Lane Drive.
Mr. O’Quinn testified that at no time did he leave the inside lane, however, upon proceeding through Lovers Lane Drive, he again looked in his rear view mirror and saw the Cinquemano vehicle strike the telephone pole.
The testimony of both Mr. and Mrs. Cinquemano were essentially the same in all respects. They stated that they were following the O’Quinn vehicle in the outside lane for some distance prior to the accident; however, they had paid no particular attention to the O’Quinn vehicle. Both testified that upon approaching the scene of'the accident, Mr. O’Quinn suddenly turned his head to the right and swerved his automobile into the right or outside lane in which the Cin-quemano vehicle was proceeding. At the time of said movement on the part of Mr. O’Quinn, the front bumper of the Cinque-mano vehicle was almost even with but was just a little bit behind the rear bumper of the O’Quinn vehicle. In order to avoid an apparent accident, Mr. Cinquemano immediately turned to the right and applied his brakes. The Cinquemano vehicle continued skidding and struck the utility pole.
Mrs. Cinquemano testified that the O’Quinn vehicle came at least two to three feet into the outside lane, and that there would certainly have been an impact between the two vehicles if her husband had not applied the brakes and turned to the right. Both of these parties, as did Mr. O’Quinn, testified that there was no right hand turn signal given by the driver of the O’Quinn vehicle.
*876 There were no witnesses to the accident except the three occupants of the two vehicles.
^ Mr. and Mrs. Cinquemano both testified that, after the accident, Mr. O’Quinn, who had proceeded some distance down the road, backed up to the scene of the accident and got out of his car. They both testified that Mr. Cinquemano told Mr. O’Quinn that he had suddenly swerved to the right directly in front of him. Mr. O’Quinn denies this. He stated that upon seeing the accident through his rear view mirror, he got into the outside lane of traffic and backed up to the scene of the accident to render assistance. He testified that Mr. Cinquemano told him that he did not know what happened but that when he saw Mr. O’Quinn turn his head to look around he became excited, applied his brakes and froze.
There were two City Police officers who investigated the accident. Officer Thomas M. Mullins, Jr., who did not remember anything about the accident until he had read his police report, and then only remembered what was in the police report, testified that Mr. Cinquemano told him that Mr. O’Quinn did not swerve in front of him. Patrolman Mullins was the officer who made and signed the police report.
On the other hand, Patrolman Glynn E. Carter, testified that he recalled the accident and that Mr. Cinquemano told him that the O’Quinn vehicle “ * * * came into his lane and forced him off the road”.
We are not favored with written reasons for the decision by the Lower Court. However, it is apparent that the Lower Court adopted the version of the accident given by the Cinquemanos as he held the driver of the O’Quinn vehicle as responsible. We believe that the preponderance of the evidence clearly establishes the correctness of the decision by the Lower Court. The record discloses that both drivers were familiar with the scene of the accident, as a matter of fact, they used Government Street daily in going to work. Mr. and Mrs. Cinquemano agreed as to all essential elements surrounding the accident. Patrolman Carter unequivocally stated that Mr. Cin-quemano told him immediately after the accident that O’Quinn had suddenly turned directly in front of him into the outside lane of traffic.
On the other hand, Mr. O’Quinn testified that at the time he turned his head to look at the Cinquemano vehicle, said vehicle was some 75 to 100 feet to his rear. It seems it would certainly be odd from the testimony and the evidence before us to now find that the mere turning of Mr. O’Quinn’s head would be such a factor as to cause a driver some 75 to 100 feet to his rear to panic, which is actually what the defense now claims.
Furthermore, the jurisprudence of this state is to the effect that the findings of fact by the Lower Court will not be disturbed except for manifest error.
This is particularly true when the questions of fact pertain to the credibility of the witnesses. Emmco v. NOLA Cabs, Inc., La.App., 144 So.2d 496; United Public Insurance Company v. Levy, La.App., 154 So.2d 80.
We, therefore, feel that the action of Mr. O’Quinn in suddenly turning from his lane of travel into the lane of travel of the Cinquemano vehicle at such a time when the Cinquemano vehicle was in very close proximity created a sudden emergency and caused Mr. Cinquemano to immediately apply his brakes and swerve to the right. We do not doubt that, after suddenly applying his brakes, Mr. Cinquemano lost control of his vehicle and was unable tv avoid hitting the telephone pole. This, possibly was caused by the dampness of the pavement. However, as was stated in Whitfield v. Travelers Insurance Company, 160 So.2d 353, “Where emergency is presented, one is not called upon to exercise a normal degree of reaction, and the failure to resort to a device which may have resulted in avoiding the accident under such *877 conditions cannot be characterized as being culpable”.
The defendant, Arthur M. O’Quinn, seeks to invoke the doctrine of res ipsa lo-quitur as against defendant Cinquemano, citing Adams v. Spellman, La.App., 130 So.2d 460; Harris v. Varnado, La.App., 94 So.2d 74. We do not believe, however, that this doctrine nor the decisions cited pertain to the facts of this present suit.
In Bauer v. Columbia Casualty Company, La.App., 126 So.2d 398, the Court said:
“In order that the doctrine of res ipsa loquitur may apply, the plaintiff must first present sufficient proof of the existence of all the elements necessary to bring the doctrine into operation, or to lay the foundation for the presumption or inference arising therefrom. These essentials include (1) a superior knowledge on the part of the defendant as to the cause of the accident, (2) the absence or unavailability of direct evidence of negligence, (3) the existence of a sufficient duty on the part of the defendant to use due care, and (4) proof of the accident or injury and defendant’s relation thereto.”
In the present case the central issue in dispute is the negligence of the defendant, O’Quinn. The evidence discloses that his negligence was the sole and proximate cause of the accident.
As a result of the accident Mrs. Cinque-mano suffered injuries consisting of a ruptured disc, a cervical strain with related shoulder involvement, a fractured ring finger on the right hand, and general bruises and contusions with a rather serious hema-toma or blood clot of the right knee. Her pain and suffering increased from the date of the accident until she was hospitalized on September 3, 1963, complaining of severe pain in her left leg and back. Traction and other treatment gave no relief and a myelo-gram taken on September 13, 1963, showed positive signs of a herniated disc. The disc was removed by surgery on September 14, 1963, and improvement was shown to a point. She was discharged from the hospital on September 17, 1963.
Mrs. Cinquemano continued to have pain and treatment and was re-admitted to the hospital on October 18, 1963, where she was put in traction almost continuously. She was again released from the hospital on October 21, 1963.
The medical testimony discloses that the operation for the disc injury was not successful and that she had continued to have pain resulting in her inability to do strenuous housework. Future operative procedures are necessary which if successful, will enable her to return to strenuous housework after a period of some nine months to one year. However, she would still have some limitation to back movement.
If this additional operation were not successful, Mrs. Cinquemano would have a “drop foot” and would need a brace to get about. This operation as testified by Dr. Richard B. Means would consist of a spinal fusion together with reexamination of the space from which the disc was removed, which he considered a serious procedure.
The Lower Court awarded Mrs. Cinquemano damages in the sum of Twenty Thousand and No/100 ($20,000.00) Dollars. The Trial Court has much discretion in an award of general damages for personal injuries and such discretion should not be disturbed upon appeal in the absence of an abuse of such discretion. Gaspard v. LeMarie, 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Company of Omaha, 246 La. 963, 169 So.2d 64.
With regard to the subrogation claim, in Suit No. 6483, by Hartford Accident and Indemnity Company against Arthur M. O’Quinn, C. Wallace Construction Company, Inc. and Trinity Universal Insurance Company in the sum of Five Hundred Thirty-three and 914oo ($533.91) Dollars, said amount was stipulated to by all parties. In view of the findings above, the judgment in that suit will be affirmed.
*878 Also we find no error by the Lower Court in its judgment in Suit No. 6485 by Mr. Cinquemano and against the defendants for special damages in which the judgment of the Lower Court awarded special damages in the sum of Four Thousand Twelve and Wioo ($4,012.77) Dollars, and future medical and maid expenses in the sum of Two Thousand One Hundred Eighty and 2%oo ($2,180.20) Dollars.
For the reasons hereinabove assigned the judgment of the Lower Court in the present suit is affirmed, all costs of this appeal shall be paid by defendants.
Judgment affirmed.