250 So.2d 407 (1971)
Charles A. VONDERBRUEGGE and Mrs. Ruby Byrd Vonderbruegge
v.
Mrs. Lanelle W. BETHEA and Insurance Company of North America.
No. 8431.
Court of Appeal of Louisiana, First Circuit.
June 30, 1971.
*408 Robert J. Young, Jr., Bascom D. Talley, Jr., Talley, Anthony, Hughes & Knight, Bogalusa, for appellants.
*409 John N. Gallaspy, Bogalusa, for appellees.
Before LOTTINGER, SARTAIN and TUCKER, JJ.
LOTTINGER, Judge.
This is an automobile accident case wherein a backing motorist collided with an automobile pulling into a service station. The plaintiffs are Charles A. Vonderbruegge and his wife, Mrs. Ruby Byrd Vonderbruegge, and the defendants are Mrs. Lanelle W. Bethea and her liability insurer, Insurance Company of North America. From a judgment in favor of the plaintiffs, the defendants have appealed.
The record points out that on July 21, 1966, at approximately 7:30 A.M., the plaintiff, Mrs. Ruby Vonderbruegge was operating her automobile in a northerly direction on Columbia Street in Bogalusa. Columbia Street has four lanes of traffic, the two south bound lanes being separated from the two north bound lanes by a set of double yellow lines. At a point approximately 100 feet south of the intersection of Columbia and Sixth Streets, the plaintiff brought her automobile to a halt in the left hand lane. She stopped her car in this position because it was her intention to turn left across the double yellow lines in the south bound lane and enter a service station known as Willie's Gulf Service Station. At this point, the plaintiff had her left turn signal light on, and it was in operation.
At the same time, the defendant, Mrs. Lanelle W. Bethea, was operating her vehicle in a southerly direction on Columbia Street. As the defendant passed through the intersection described above, she noticed an ice sign in the vicinity of the service station. She pulled into the extreme right hand lane, which was used as a parking lane. She had passed the entrance of the service station, and proceeded to back up to get closer to the curbing. She testified that she looked in her rear view mirror, and since she did not see traffic coming out of the service station or following her on Columbia Street, she proceeded to back her station wagon toward the entrance of the service station. The plaintiff had observed the approaching traffic on Columbia Street, and had even seen the defendant's car. She checked her rear view mirrors and the lanes behind her were clear and the south bound lanes were then free of traffic. The plaintiff began her left turn and as she proceeded toward the entrance to the service station, she observed the defendant's vehicle backing toward her automobile. She blew her automobile horn and brought her car to a halt in the projected path of the defendant's station wagon. As she was sitting there, she moved the gear lever up into "Park". She had stopped her vehicle even though there was nothing to stop her from proceeding into the service station. The rear of the defendant's vehicle struck the left side of the plaintiff's car, apparently causing minor damage, as no claim was made. The plaintiff claims certain physical injuries as a result of the accident.
In ruling in favor of plaintiff, the Trial Judge in his written reasons for judgment, after a discussion of the facts, stated:
"A review of the testimony that was produced in Court as well as the deposition of an eye witness to the accident leads me to the conclusion that the defendant was negligent in the manner which she backed her vehicle and this was the proximate cause of the accident."
The defendant-appellants have appealed, and have assigned as "Specifications of Errors" the following:
1. The Trial Court erred in finding the defendant, Mrs. Lanelle W. Bethea, guilty of any negligence.
2. The Trial Court erred in finding the plaintiff, Ruby Byrd Vonderbruegge, free of negligence.
3. The Trial Court erred in allowing certain witnesses to refer to a picture, previously marked by another witness.

*410 4. The Trial Court erred in awarding to the plaintiff excessive damages not only for pain and suffering but also for special items of damages which were not supported by the testimony.
The plaintiffs have answered the appeal seeking an increase in quantum.
We do not find that the Trial Judge erred in finding negligence on the part of Mrs. Lanelle W. Bethea. In the operation of an automobile, the backing maneuver is one which must be exercised with the utmost caution. This has been expressed by the Legislature of Louisiana in LSA-R.S. 32:281, to-wit:
"The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic."
We also find an expression of the above in Blashfield Automobile Law and Practice, Vol. 3, Page 482, Section 117.3, to-wit:
"Ordinarily this duty of looking backward is to be performed by the motorist not only before he begins the operation of backing, but also while he is in the act of backing."
As to her actions in backing, the defendant testified as follows:
"A. I looked to the front and there were no cars approaching on my side of the road and I looked in the rear mirrors and there were no cars except about a block back there was a car coming in the center lane on the right and then I started back. There were no cars either to the front or back of me.
Q. Did you continue to look in your mirrors as you backed?
A. No, I looked toward the curb because I was parking, the usual procedure.
Q. You did not then continue to look in your mirror?
A. No, I was looking at the right-hand window at the parking area.
Q. Which mirror did you look into prior to the backing up?
A. I looked both in my rear view mirror and also the one on the outside. As well as I can remember, that is what I usually do when I back into a place."
The jurisprudence of this State needs no citation to set forth that the backing of a motor vehicle demands great care and attention. We do not believe that the defendant exercised that amount of care and attention that is demanded.
It is the opinion of this Court that Mrs. Vonderbruegge was not guilty of any negligence. Issue is made of the fact that the plaintiff crossed the double yellow lines in order to go into the service station. It is common knowledge that one of the rules of highway safety is that a driver does not cross a yellow line in his lane. It is quite obvious to this Court that this rule applies to passing situations and not to when it is necessary to cross double yellow lines where a driver wishes to leave the highway as in this instance. LSA-R.S. 32:82B, provides that "No vehicle shall cross the painted center line of any multiple lane highway, except for the purpose of making a turn."
A further contention of the defendant is that since the plaintiff was making a left turn, a great degree of care must be exercised. In the normal left turn cases, this is quite true, but this is not a normal left turn case. First of all, the plaintiff was operating her vehicle on a four lane street, divided by a double yellow line. Secondly, the plaintiff was occupying the left hand or passing lane for north bound traffic. Without question, the plaintiff could assume that no one would pass her to her left, that is, going north in the south bound lanes. The plaintiff testified that no cars were approaching to her right, and she therefore proceeded across. At this point, *411 we cannot find where the plaintiff had acted negligently in any manner, in fact, she had acted in a very careful manner. At the point of crossing over the south bound lanes, plaintiff's prime obligation was to watch for traffic approaching from the north. She had no reason to look to the south. When the plaintiff saw the defendant's automobile backing toward her, she did what any reasonable person would do under the circumstances, she applied her brakes. We cannot call this negligence.
Next, the defendant contends that the plaintiff had the last clear chance to avoid the collision. With this we do not agree. Because the plaintiff acted as an reasonable person would under similar circumstances, her automobile was at a standstill and could not avoid the accident. On the other hand, if the defendant would have been looking where she was going to begin with, she would have stopped her station wagon before the collision. Here the defendant was backing toward a driveway, and did not watch to determine whether anyone would be entering the driveway.
Therefore, for the above and foregoing reasons, we do not find that the Trial Judge erred in finding the defendant negligent and the plaintiff free of negligence.
Thirdly, the defendant-appellant contends the Trial Judge erred in allowing certain witnesses to refer to a photo which had been previously marked by another witness. In overruling the objection to the use of this photo, the Trial Judge stated:
"If that (photo) were in evidence he can use it for once a picture is in evidence, he can use it to question another witness and I think the question of those marks is a matter to be brought out in cross examination. It goes to the weight of the testimony. I don't think it refers back to the admissibility of the picture. I think once everything is in evidence it can be looked at by the next witness.
* * * * * *
"I think it is preferable that they are not, but it could very well be that your first witness on the stand might mark it and then your next witness has to look at it. That is the same situation I am faced with, so I overruled the objection."
We are of the opinion that the Trial Judge handled the objection properly, and no further comment is necessary.
As a result of the accident the plaintiff suffered contusions of the left flank region and left posterior thoracic area. On July 21, 1966, the date of the accident, the plaintiff was placed in the hospital and stayed there until July 28, 1966. The medical findings were muscle spasm of the lumbar area. X-rays were completely negative showing nothing associated with the trauma. She also suffered a contusion of the back portion of the chest. Treatment consisted of heat applications, analgesics and muscle relaxants. At the time of her discharge, her pain and muscle spasms had subsided to the point she could be relatively free of pain at home.
She was seen as an out patient until August 10, 1966, when she was re-admitted to the hospital. She was placed in the hospital because of acute bronchitis or a pulmonary infection. The attending physician testified that it was his feeling that because of the pain plaintiff was under, she could not take deep breaths, and therefore, a small portion of the lungs collapsed. A thoracic and cardio-vascular surgeon testified that it would have to be a trauma to the lung itself for the accident to be connected with the pulmonary infection. This specialist examined the plaintiff in September of 1968. On September 1, 1966, a deep thrombophlebitis, an infection of the deep vein of the left leg, was detected. The attending physician attributed this new condition to the fact that it was necessary to keep her in bed because of the pre-existing fever and infection. She was discharged September 16, 1966.
*412 She was seen as an out patient and plaintiff would call her doctor on the phone, her complaints being pain in the leg and associated swelling in the left leg. She was next placed in the hospital on January 24, 1968, and discharged March 7, 1968. The reason for her being in the hospital was a kidney infection. She still had pain and swelling in her leg. The attending physician admitted that if not for the kidney infection, she would not have been placed in the hospital.
On July 29, 1968, the plaintiff was admitted for the last time. She was discharged from the hospital on September 8, 1968. Her admittance to the hospital at this time was because of Parkinson's Disease. The attending physician testified that the thrombophlebitis, or infection of the deep vein of the leg did not cause the Parkinson's Disease, but any debilitating disease of the nature of Thrombophlebitis would tend to accentuate or make the symptoms of Parkinson's Disease a little more evident.
The treating physician testified that his fees for all of the out patient visits attributable to the accident amounted to $320.00. As to the hospital stay of July 21 to July 28, 1966, the doctor fee was $50.00, and the hospital bill was $222.25. The bills for the August 10 to September 16, 1966 hospital stay were $850.30, for hospital and $185.00 for doctor. From January 24 to March 7, 1968, the hospital charge was $1,586.37, and the doctor bill was $230.00. The last stay in the hospital from July 29 to September 8 of 1968, was $1,162.15 for hospital, and $220.00 for doctor.
The Trial Judge awarded Mrs. Vonderbruegge the sum of $30,000.00 for personal injuries. Considering that the thrombophlebitis is permanent and was cause of from 70 to 80 percent disability of her left leg, we find no error in the award. The Trial Judge also awarded medical expenses to the husband in the amount of $3,234.64, and this we do find excessive. There is no question that the first hospital confinement was necessitated by the accident. We further find the second visit to the hospital to be accident connected, as well as the out patient visits, but we cannot attribute the third and fourth hospital visits to the accident, inasmuch as the treating doctor said that if not for the kidney infection or Parkinson's Disease, the hospital stays would not have been required. However, the treating physician did testify that during Mrs. Vonderbruegge's third period of hospitalization three-fourths of his bill of $230.00 or $172.50 was attributable to the treatment of thrombophlebitis and on the occasion of her fourth period of hospitalization one-fourth of his bill of $220.00 or $55.00 was associated with the same treatment. Therefore, this part of the award will be reduced to $1,855.05.
The Trial Judge further awarded $7,500.00 for future medical services. Considering that Mrs. Vonderbruegge has not necessitated a hospital stay attributable to the accident since September of 1966, we find the award to be manifestly erroneous. Her out patient medical expense from the date of the accident, July 21, 1966, to the date of the trial, October 1, 1968, has only amounted to $320.00. Taking this into consideration, we feel that an award of $750.00 for future medical services would be more than adequate.
The Trial Court further awarded $3,050.00 for maid service. The testimony established that it was necessary to employ domestic help since the accident at $35.00 per week. Recovery is allowed for reasonable and necessary expenditures incurred to obtain domestic help. Hickman v. Bawcom, 149 So.2d 178 (La.App. 3rd Cir., 1963). Plaintiffs in answering the appeal have asked for an increase in this particular award, but we do not find that plaintiff has carried the burden of proof sufficiently to allow this Court to increase this particular award, though we find no error in the award made by the Trial Court.
*413 As to the loss of earnings on the part of Mrs. Vonderbruegge, the Trial Judge stated his reasons for judgment:
"Although the income tax returns for several years are in the record it is impossible for me to determine with any degree of legal certainty which area of their change in income was directly caused by this accident."
With this reasoning of the Trial Court we cannot disagree.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court in favor of Charles A. Vonderbruegge in the amount of $13,785.64 is hereby reduced to the sum of $5,655.05.
The appellees have also asked in their answer to this appeal that the judgment should be amended by allowing interest at the rate of 5% per annum from judicial demand through July 29, 1970, and then at the rate of 7% per annum from July 30, 1970, until paid.
Plaintiffs in the instant case prayed for legal interest from date of judicial demand until paid, and the Lower Court allowed interest at the rate of 5% per annum.
By Act No. 315 of 1970, C.C. Art. 2924 was amended to provide as follows:
"Interest is either legal or conventional. Legal interest is fixed at the following rates, to wit: at seven per cent on all sums which are the object of a judicial demand. Whence this is called judicial interest * * *"
This amendment went into effect on July 30, 1970. The accident which is the basis of this suit occurred on July 21, 1966.
In Talbot v. Trinity Universal Insurance Company, 99 So.2d 811 (La.App. 1st Cir., 1957), writs denied, this Court was presented with a similar situation involving a workmen's compensation accident which occurred on June 19, 1956, and the application of an amendment to the workmen's compensation benefits approved by the Governor on July 12, 1956. In holding that the benefits applicable were those in effect at the time the accident occurred we said:
"It is a sound rule of construction never to consider laws as applicable to cases which arose previous to their passage, unless the Legislature have in express terms declared such to be their intention, however, this general principle or conception applies only to statutes or constitutional provisions effecting substantive rights, and has no application where there is involved a remedial statute or provision which effects not the substantive rights of the party but only the remedies which are to be availed of in the enforcement of those rights." (Cases cited therein).
We see no difference between the application in the Talbot case, supra, and the instant case, and therefore see no error on the part of the Trial Judge.
The said appellees are further complaining in their answer to this appeal that the Lower Court failed to fix the expert witness fee of Dr. Edward B. Scoggin and assess same as costs. Due to the absence of same in the judgment, the said judgment in favor of the plaintiffs herein is hereby further amended to fix the expert witness fee of Dr. Edward B. Scoggin in the amount of $100.00 and assessing same as cost, and as amended herein, the said judgment appealed from is affirmed at appellants' costs.
Judgment amended and affirmed.