SAMUEL, Judge.
. This is a suit for personal injuries and other damages resulting from a collision between an automobile driven by the plaintiff and a large diesel truck and trailer. The petition names three defendants: (1) James H. Wyatt, driver of the tractor-trailer; (2) Deaton Truck Lines, Inc., Wyatt’s alleged employer; and (3) Continental Insurance Company, Deaton’s alleged insurer. An answer was filed by Wyatt, Deaton and Central National Insurance Company averring Central had been improperly sued as Continental, denying liability, and alternatively pleading contributory negligence and assumption of risk. Thereafter plaintiff dismissed the suit as against Continental.
The trial judge accepted plaintiff’s version of the manner in which the accident occurred and rendered judgment in favor of plaintiff and against the three defendants, Wyatt, Deaton and Central, in solido, in the sum of $15,124.80, consisting of awards of $12,500 for personal injuries and $2,624.80 for special damages. Wyatt, Deaton and Central have appealed.
In this court appellants contend: (1) as a factual matter, contrary to the finding of the trial court, the negligence of the plaintiff was the sole proximate cause of the accident; and, alternatively, (2) the $12,-500 award for personal injuries is excessive.
*427 The collision occurred at 8 a. m. on March 8, 1968 in the 3500 block of Tulane Avenue in the City of New Orleans. The weather was clear. Tulane Avenue, a main thoroughfare running generally north-south, contained four lanes on each side of a neutral ground, three for moving traffic and one for parking. Plaintiff had driven into a garage on the east side of Tulane for a transmission adjustment, had been told to return later, and backed out of the garage into the street. The defendant vehicle was proceeding north on Tulane. The rear right side of its trailer, in the vicinity of the rear wheels, struck the left rear of the plaintiff car.
Only three witnesses testified relative to the manner in which the accident occurred. Two, the plaintiff and the service manager of the garage, were called by the plaintiff; the third was the defendant-driver.
Plaintiff testified he slowly backed his car from the garage into the street. Because of two approaching cars on Tulane, one in the neutral ground lane and one in the middle lane, and because it was difficult to see south on Tulane due to vehicles parked in the lane next to the curb, he stopped when the rear of his car, particularly the right rear, was a short distance into the third lane from the neutral ground. While he remained stopped in that position the two approaching cars passed and a small automobile, which had entered Tulane from South Clark, the nearest intersecting street, parked next to the curb just south of the point where the garage driveway entered the street. He then saw the defendant vehicle approaching in the neutral ground lane. When it was a short distance from South Clark, it began “drifting” over into the other lanes. It appeared to plaintiff that the defendant tractor would strike his automobile; but the tractor passed without colliding and the rear portion of the trailer struck the right rear of his car.
Plaintiff’s version of the accident was corroborated in material measure by the testimony of the service manager. He stated at the time of the accident he was at the door of the garage assisting the plaintiff in backing out. The defendant unit was approaching in the neutral ground lane behind a small foreign car. The car was traveling at a slow rate of speed and the truck and trailer “whipped” around the car to pass. The trailer struck the rear of the plaintiff automobile while the latter was stopped. This witness also testified to facts which either contradict some of plaintiff’s testimony or appear to be unlikely or impossible. We will mention these later in our discussion of appellants’ first contention.
The defendant-driver testified he entered the third lane from the neutral ground approximately four and one-half blocks south of the site of the accident and was proceeding north in that third lane at a speed of 15 to 20 miles per hour. There was a parked car next to the curb just south of the garage driveway. Seeing the plaintiff car backing out of the driveway he slowed his truck trailer, the car stopped and he proceeded to pass, continuing forward in the third traffic lane; and plaintiff then backed into the right rear wheels of the trailer as the trailer was passing the driveway. He realized the accident had happened only when he saw, in one of his mirrors, that the trunk of the plaintiff automobile was raised as a result of the collision. He then stopped, parked his vehicle, and went back to the scene o.f the accident. This witness also testified he could have brought his vehicle to a stop in a distance of about twelve or fifteen feet.
It is apparent that liability is a factual question. If the defendants’ version of the accident is accepted, there can be no liability on their part. An unusually high degree of care is required of those who back from private driveways into main thoroughfares.[1] On the other hand, the *428 opposite result is reached if the plaintiff’s version is accepted. Under that version the defendant-driver, who saw the plaintiff car in its stopped position prior to the collision, had ample time and opportunity to avoid the accident and liability follows from an application of the doctrine of last clear chance.[2]
Our firmly established rule is that on questions of fact involving the credibility of witnesses the trial court can be reversed only for manifest error.[3] Here appellants’ first contention, in essence that the finding of fact by the trial court is manifestly erroneous, is based on the argument that the testimony of the service manager, upon which the trial judge relied as corroborating plaintiff’s testimony, is not worthy of belief because it contains contradictions, in fact describes a physically impossible accident, and because the un-controverted physical facts establish that the accident could not have happened as stated by either the plaintiff or the service manager.
The service manager’s testimony does contain some discrepancies and an impossibility. He did testify that the defendant vehicle was in the neutral ground lane traveling at a speed of 30 to 35 miles per hour and 30 to 40 feet away from the point of impact when it passed the small foreign car, and that the back of the plaintiff car never actually entered Tulane Avenue or crossed the curb line, which if true would make it physically impossible for the accident to happen. In addition, contrary to the testimony of the other two witnesses and to pictures taken at the scene shortly after the collision and introduced in evidence, he was of the opinion the trailer had struck the plaintiff car in the area where the tractor and trailer units are joined, he did not remember a car stopped in the parking lane immediately south of the driveway, and he testified the right rear tire of the plaintiff car was blown out as a result of the accident.
We find no merit in the argument relative to the testimony of the service manager. The trial court is not required to accept or reject testimony of any witness in its entirety; it is free to accept those portions of the testimony which it deems credible and to reject the remainder. In view of the many discrepancies usually present in a factually contested case, any other approach would be unworkable. The trial court’s reliance on some parts of the service manager’s testimony does not constitute manifest error.
Nor do we agree that the accident could not have happened as testified by the plaintiff. Relative to. this contention appellants argue: whenever a tractor-trailer unit makes a turn, the rear of the trailer goes to the inside of the turn and not to the outside; thus the rear wheels of the trailer would have turned toward the curb when the defendant unit first turned to its right and then as that unit’s driver straightened out and turned left they would have gone away from the curb; but in no event would those rear wheels have gone any closer to the curb than did the tractor; and it is clear that the tractor did not come in contact with the plaintiff car.
The answer to the argument is that the record is completely devoid of any evidence, expert or otherwise, tending to prove the principle urged, nor is there any evidence tending to show when the defendant driver turned left after turning right or the degree or extent of that left turn. On the basis of the evidence contained in the record, we agree with the *429 trial court that the collision could have occurred under the facts he found. Accordingly, we affirm on the question of liability and address ourselves to appellants’ second contention, that the $12,500 award for personal injuries is excessive.
Testimony relative to plaintiff’s injuries was given by the plaintiff and two medical doctors, Byron M. Unkauf, an orthopedic surgeon and the treating physician, and Earl R. Hackett, a neurosurgeon who examined plaintiff on one occasion approximately five months after the accident. The combined testimony of these three witnesses reveals the following:
Plaintiff saw Dr. Unkauf on the day of the accident complaining of pain in the left leg. After taking the history and after performing an examination, that doctor felt plaintiff had sustained a moderately severe lumbosacral strain and a possible rupture of some of the fibers of the annulus. He was given prescriptions for sedation, tissue enzimes and muscle relaxants and advised to use hot packs. Thereafter physiotherapy was begun and continued over an extended period. Muscle tightness had been noted in plaintiff’s earlier visits; but in June, 1968 his condition had deteriorated and muscle spasms were evident.
Subsequently, as a result of medical examinations and plaintiff’s continuing difficulties, Dr. Unkauf ordered a myelogram which was performed on September 18, 1968. The results were positive, indicating a laminectomy should be performed. Plaintiff underwent surgery on December 4, 1968, was hospitalized for two weeks and had more than the usual expected discomfort postoperatively.
He was still under medical treatment at the time of trial on December 11, 1969. During the course of treatment he developed a neck problem and trochanteric bursitis, which Dr. Unkauf stated did not result directly from the accident itself but which did result from plaintiff’s back problem following the surgery.
Plaintiff had sustained a back injury prior to the accident in suit and both doctors were of the opinion that his condition is caused by the accident in suit either solely or as an aggravation of the prior injury. Dr. Unkauf was of the further opinion that plaintiff’s disability of the back was permanent and constituted a 10-15% disability of the body.
Under these circumstances our conclusion is that, quite clearly, the award of $12,500 is not excessive.[4]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. See LSA-R.S. 32:281; Vonderbruegge v. Bethea, La.App., 250 So.2d 407; Olps v. Scanlan, La.App., 237 So.2d 703.

. Laird v. Travelers Ins. Co., La.App., 251 So.2d 73; Evans v. Johnson, La.App., 236 So.2d 285; Driscoll v. Allstate Ins. Co., La.App., 223 So.2d 689; Demandre v. Robinson, La.App., 220 So.2d 542; Glynn v. Duvernay, La.App., 217 So.2d 787.

. Powell v. Johnson, La.App., 248 So.2d 341; Inabnet v. State Farm Mutual Automobile Ins. Co., La.App., 234 So.2d 827; Naquin v. VanCourt, La.App., 222 So.2d 601; Ballaron v. Roth, La.App., 221 So.2d 297.

. See Lovett v. Continental Ins. Co., La. App., 249 So.2d 581; Cinquemano v. O’Quinn, 180 So.2d 873; Johnson v. Crescent Arms Apartments, Inc., La.App., 221 So.2d 633; Marcantel v. Southern Farm Bureau Casualty Insurance Company, La.App., 102 So.2d 879.