293 So.2d 198 (1974)
C. P. GREEN and Marjorie Green
v.
TACA INTERNATIONAL AIRLINES and United States Fidelity and Guaranty Company.
No. 5859.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1974.
Rehearing Denied April 9, 1974.
Writ Granted May 24, 1974.
*199 Scofield, Bergstedt & Gerard, Richard E. Gerard, Jr., Lake Charles, for plaintiffs-appellees.
Christovich & Kearney, A. R. Christovich, Jr., New Orleans, for defendant-appellant, Taca International Airlines.
Wiedemann & Fransen, Lawrence D. Wiedemann, New Orleans, for defendant-appellant, United States Fidelity & Guaranty Co.
Before SAMUEL, REDMANN and BAILES, JJ.
SAMUEL, Judge.
Plaintiffs, husband and wife, instituted this suit for personal injuries sustained by the wife as a result of a fall at Moisant International Airport while she was approaching a Taca International Airlines plane preparatory to boarding that plane as a fare paying passenger. The airport is owned and operated by the City of New Orleans, New Orleans Aviation Board. Named defendants in the suit are Taca International Airlines and United States Fidelity and Guaranty Company, public liability insurer of the New Orleans Aviation Board. Defendants answered in the form of a general denial and alternatively pleaded contributory negligence. Third party complaints for indemnity were filed by Taca against the Aviation Board, and by United States Fidelity against Taca.
*200 Following trial on the merits, judgment was rendered against Taca and United States Fidelity in favor of the wife in the sum of $7,500 and in favor of the husband for his wife's medical expenses in the sum of $828. Both third party demands were dismissed. Both defendants have appealed and plaintiffs have answered the appeal claiming the award for personal injuries is inadequate.
These facts are not in dispute: At approximately 5:45 a. m. on the morning of February 22, 1970 Mr. and Mrs. Green left the Taca boarding gate located at the lower concourse of the airport terminal to proceed to the plane which was parked at a distance of about 125 feet behind two other planes. It was dark. Mercury vapor lights were on the outside of the terminal building. There were lights inside the building and inside the plane, the latter illuminating the steps leading into the plane.
A group of passengers were preceding the Greens, and others were following them, to board the plane. Mrs. Green was wearing medium heel walking shoes. She carried a coat over her left arm and a handbag and cosmetic case in her right hand. When she had traversed about half the distance to the plane she tripped over a 9 inch by 4 inch by 2 inch safety installation required by the Federal Aviation Administration to ground aircraft during the fueling operation, thus minimizing the danger of explosion. She was assisted to the plane where first aid was administered for injuries to her knees and ankle. After her arrival in Guatemala further medical assistance was administered, and thereafter medical treatment was rendered after her return to this country.
In this court both defendants contend there was no negligence on their part; that there was negligence, or contributory negligence, on the part of Mrs. Green; and alternatively, the amount of the award is excessive. Additionally, Taca contends it is entitled to a judgment for indemnity on its third party complaint against the Aviation Board for the reason that by contract between Taca and the Board the latter undertook the care and maintenance of the area in which the fall occurred. United States Fidelity also contends it is entitled to a judgment for indemnity against Taca on its third party complaint against that third party defendant.
Addressing ourselves first to the question of negligence on the part of Mrs. Green, defendants allege she should have observed the ground rod installation, and that her failure to do so constitutes negligence on her part. We do not agree.
All of the testifying eyewitnesses, Mr. and Mrs. Green and John Walden, an aircraft mechanic for Taca, agree that it was quite dark and there were no barriers, warning devices or distinguishable paint around the installation where Mrs. Green fell. Mrs. Green testified she looked at the ground ahead of her as she left the terminal building to proceed to the plane but did not look down thereafter as she was looking toward the plane and following other passengers preceding her. We do not find that such action constitutes negligence on her part, nor does the evidence establish that she was "loaded down" with luggage and thus unable to see where she was going, as claimed by defendants. Nor are we impressed with the fact that Mr. Green was able to discern 15 similar installations after he boarded the plane and looked back at the concrete from the plane windows. Mr. Green knew what he was looking for after the accident, but there was no reason for Mrs. Green to anticipate such installations prior to her fall.
Considering the darkness of the hour, the unusual distance from the terminal where the Taca plane was located behind two other planes, the fact that there was nothing to warn her of the installation which was unknown to her, and that she was walking with, and surrounded by, other passengers, we cannot find that Mrs. Green was negligent in failing to see the small hole which caused her fall.
*201 The Aviation Board concedes it owed a duty to Mrs. Green commensurate with her status as an invitee while at the airport and that it was their duty to make the obligatory installations visible. The applicable duty of care is set forth in the case of Boubede v. Casualty Reciprocal Exchange,[1] upon which it relies:
"Storekeepers and property owners are not insurers of the safety of their invitees; they are only under a duty to keep their premises in a safe condition for use in a manner consistent with the purposes thereof, i. e., free of defects or conditions in the nature of hidden dangers, traps or pitfalls which are not known to the invitee and would not be observed by him in the exercise of reasonable care; the invitee assumes the obvious, normal or ordinary risks attendant on the use of the premises, and storekeepers or owners are not liable for injuries to an invitee when those injuries result from a danger which should have been observed by the latter in the exercise of reasonable care."
In support of their discharge of that duty the Board introduced the testimony of Gordon Stout, its airport superintendent, and J. C. Pitmann, in charge of its lighting systems. Their testimony is to the effect that the area is illuminated by twenty 1000 watt mercury vapor lights located on the outside of the building, making it possible to read a newspaper at a distance of 100 feet, that each ground rod installation is painted traffic yellow for 4 to 6 inches on either side, and that the area is inspected daily. It was admitted on cross examination that planes, passengers, baggage carts, fuel trucks and other vehicles traverse the area daily, and that the paint is only renewed as needed. Since the trial court believed the eyewitnesses that no paint was visible around the area where Mrs. Green fell, and that visibility was poor on the morning of the accident, we are of the opinion that the Board did not discharge its duty to Mrs. Green and therefore was negligent.
The liability of Taca is predicated on the duty of a public carrier to its passengers. Applicable here is the jurisprudential rule that a public carrier, while not an insurer, is required to exercise the highest degree of care for the safety of its passengers, and a mere showing of injury to a fare paying passenger establishes a prima facie case of negligence against the carrier.[2] And a common carrier is not relieved from liability for injury to its passengers, resulting from the unsafe condition of the premises which they must use in order to board its vehicles, because of the mere fact that such premises are under the control of another company with which the carrier has contracted for terminal facilities.[3] Taca is liable under these rules.
Evidence relative to Mrs. Green's physical condition was given by plaintiffs and two medical experts, Dr. Rufus H. Alldredge, and Dr. H. R. Soboloff, orthopedic specialists.
Mrs. Green injured her knees, right ankle, neck and back as a result of the accident, which occurred on February 22, 1970. Dr. Alldredge first saw her on April 6, 1970. He took her medical history, performed an orthopedic examination, and ordered x-rays. Mrs. Green complained of pain in the neck, the back of her head, back, and headaches. In his opinion there was no serious injury or damage, her headaches were due to pain in the base of the skull, the neck injury was an aggravation of a preexisting degenerative arthritic condition, and pain in the lumbar region was aggravated by the fall. She had a painful trochanter syndrome in the right *202 hip which was probably a result of the fall but her basic problems existed long before the fall.
Treatment consisted of pain relieving medicine, an injection for the bursitis and a prescription for severe pain, if necessary. She returned in two weeks, was started on a physiotherapy regime for the neck and the back, and received a cortisone injection for the bursitis. Mrs. Green saw the doctor on about 10 occasions from the first visit until February 22, 1972, during which time she had the same complaints, underwent physiotherapy much longer than usual, and received cortisone on several occasions for persistent tenderness over the right hip. She was advised to see a doctor to lose weight, and a neurosurgeon for the persistent thigh pain.
Dr. Alldredge was of the opinion that the examinations and treatment subsequent to October 18, 1971 were unrelated to the accident. He was unable to state whether the trochanter bursitis in the hip was aggravated or caused by the fall, but he doubted that it was because it is a common condition.
Dr. Soboloff saw Mrs. Green on one occasion, June 2, 1972. At that time she still had soreness in the right hip area, tenderness of the right and left knee, occasional difficulty with her back, and no further problems with her neck. X-rays made at the time, and compared with the two previous sets of x-rays, showed the same articular and degenerative disease. He was of the opinion that the trochanteric tenderness was a direct cause and effect of the injury. However, he did not regard her present complaints relating to her knees as referrable to the accident.
Mrs. Green testified she is unable to work in her garden, no longer goes bowling, and is unable to mop and perform other routine household chores. She is 59 years of age, and was told by a doctor some ten years previously that she had an 85 year old back.
Plaintiffs contend Mrs. Green should be awarded $30,000 and defendants claim an award of $2,500 would be adequate. The trial court awarded $7,500.
In order to ascertain whether the award is excessive or inadequate, we have searched the jurisprudence for cases involving somewhat similar injuries. Plaintiffs cite us to the cases of Johnson v. Crescent Arms Apartments, Inc., La.App., 221 So.2d 633, Marcantel v. Southern Farm Bureau Casualty Ins. Co., La.App., 102 So.2d 879; Manning v. Herrin Transportation Company, La.App., 201 So.2d 314; Dupree v. Wyatt, La.App., 255 So.2d 425; Slayton v. Grant, La.App., 248 So.2d 16, and Deville v. United States Fidelity & Guaranty Co., La.App., 258 So.2d 694. Defendants have cited no cases.
While we might have awarded a different amount had the matter been presented to us initially, we cannot say the award of $7,500 is excessive or inadequate to the extent that it constitutes an abuse of the "much discretion" given to the trial court by LSA-C.C. Art. 1934 (3).
Finally, addressing ourselves to the issue relative to the two third-party complaints for indemnity, we are of the opinion the trial court properly dismissed the complaint by United States Fidelity against Taca, but that Taca is entitled to a judgment for indemnity on its third party complaint.
Taca enjoyed the use of the airport and occupied its premises there by reason of a lease between it, as lessee, and the Aviation Board, as lessor. In pertinent part the lease obligated the Board to operate, maintain, keep in good repair the airport, all public and passenger space and all appurtenances and facilities connected with the same, including, without limiting the generality thereof, all field lighting. The accident in suit occurred as a result of the Board's failure to properly perform those contractual duties, specifically in failing to maintain the premises where the accident occurred in a proper and safe condition.
*203 As that failure caused Taca to be liable in damages to the original plaintiffs, Taca is entitled to indemnity to the full extent of such damages. Taca's liability herein is based solely upon its obligation to Mrs. Green because of their relationship of common carrier and fare paying passenger. Insofar as is material to this suit, Taca had no obligation to the Board, while the Board was obligated to Taca to perform its lease contract in such a manner as not to expose Taca to liability to the plaintiffs.[4] Other legal niceties aside, it appears to us that Taca had an independent cause of action against the Board to recover damages sustained by the former as a result of the latter's breach of its contractual duties under the lease, and that there is no distinguishable difference here between such an independent action and the present third-party demand for indemnity; both are based on the same cause of action.
For the reasons assigned, that portion of the judgment appealed from which dismisses the third-party complaint of Taca International Airlines is reversed and it is now ordered that there be judgment in favor of the third-party plaintiff, Taca International Airlines, and against the third-party defendant, the City of New Orleans through the New Orleans Aviation Board, in the full sum of $8,338, together with legal interest thereon at the rate of 7% per annum from January 5, 1971 until paid; said judgment being a judgment over against the third-party defendant for damages incurred by the third-party plaintiff as a result of the judgment against it in the principal demand. In all other respects except the imposition of court costs, the judgment appealed from is affirmed. Costs in both courts are to be paid by defendant-appellant, United States Fidelity & Guaranty Company.
Reversed in part; affirmed in part.
REDMANN, J., dissenting in part with written reasons.
REDMANN, Judge (dissenting in part).
Taca knew the ground rod holes were not kept painted sufficiently to attract passengers' attention, yet it directed passengers unassisted and unwarned on a path which crossed the unobvious holes. This was Taca's fault which both makes it liable to plaintiff and denies it indemnity and limits it to contribution from the airport contractually obliged to maintain the holes. The airport may well have owed a duty to Taca to paint the holes, but Taca also owed a duty to the airport not to send passengers across the holes unassisted and unwarned.
NOTES
[1] La.App., 209 So.2d 82, 83.
[2] Wise v. Prescott, 244 La. 157, 151 So.2d 356; Alfred v. Benoit, La.App., 253 So.2d 797.
[3] See City of Knoxville, Tenn. v. Bailey, 6 Cir., 222 F.2d 520; Young v. Fryoux, La. App., 222 So.2d 638.
[4] Truxillo v. Gentilly Medical Building, Inc., La.App., 225 So.2d 488.